*542
 
 ' HAWTHORNE, Justice.
 

 Defendant, Webber Atwood, has appealed to this court from his conviction and sentence of death for the murder of Walter Mirl Timms.
 

 During the proceedings in the court below, eight bills of exception were reserved.
 

 Bills of Exception Nos. 1, 2, and 3.
 

 These bills of exception were reserved to the refusal of the trial judge to sustain defendant’s challenge for cause of prospective jurors Ed Y. Berry, J. C. Seaman, and J. B. Barnes.
 

 Counsel for defendant challenged each of these prospective jurors on the ground that he had formed an opinion 'as to the defendant’s guilt or innocence. A.reading of the entire examination of. each one of these prospective jurors discloses that each stated under oath that he had formed an opinion as to the. guilt or innocence of the accused from reading articles in the newspapers or from discussions participated in or overheard. However, each stated that he had no fixed opinion, that his opinion would readily yield to the evidence, that he was not biased or prejudiced against the defendant in any way, and that, if selected and sworn as a juror to try the case, he would be guided by the evidence adduced at the trial and the law as charged by the judge.
 

 Article 351 of the Code of Criminal Procedure provides that one of the special causes for which a juror may be challenged is that he is not impartial, the cause of his bias being immaterial, but that an opinion as to the guilt or innocence of the' accused which is not fixed or has not been deliberately formed or which would yield to the evidence or which could be changed does not disqualify the juror.
 

 As each one of these prospective jurors did not have a fixed opinion, deliberately formed, as to the guilt or innocence of the accused or an opinion which would not yield to evidence or which could not be changed, we are of the opinion that defendant’s challenge for cause in each instance was properly overruled by the trial court. State v. Henry, 200 La. 875, 9 So.2d 215, and authorities therein cited. .
 

 Bill of Exception No. 4.
 

 This bill was taken to the overruling by the district judge of the challenge for cause .of prospective juror W. M.. Stanley, who was challenged for cause by counsel for defendant because of his acquaintance with the deceased and his family and for probable favoritism and partiality to the deceased.
 

 On the examination of this prospective juror on his voir dire, given under oath, he testified that he was acquainted with both the deceased and the defendant, and that he was acquainted also with certain members of the deceased’s family; that he had heard the case discussed but had not formed any opinion as t.o the guilt or innocence of the accused; that he was not biased or preju
 
 *544
 
 diced against the accused, and that the fact that he was acquainted with these parties would not influence him in his verdict in any way.
 

 The law is perfectly clear, as set forth in Article 351 of the Code of Criminal Procedure, that the relations, whether by friendship or enmity, between a prospective juror and the accused or between the juror and the person injured are such that it must be reasonably believed that they would influence the juror in coming to a verdict, before a prospective juror is disqualified because of such acquaintance. A reading of this prospective juror’s entire examination clearly shows that the relations between him and the accused and between him and the deceased were not such that it would be reasonably believed that they would'influence the juror in coming to a verdict for or against the accused. For this reason we see no merit in this challenge.
 

 None of the four prospective jurors challenged for cause (which challenges were overruled) served on the jury which tried this defendant, each being challenged by the defendant peremptorily.
 

 Bill of Exception No. 5.
 

 Bill No. 5 was taken to the overruling of the challenge for cause of A. B. Gately, a prospective juror.
 

 This challenge was admittedly made solely and Only for the purpose of exhausting defendant’s peremptory challenges, and therefore presents nothing for review.
 

 Bill of Exception No. 6.
 

 Defendant, Webber Atwood, testified in his own behalf, and during his cross-examination was asked the question: “Have you ever been before this Court?” Later, while he was still under cross-examination, he was asked by the district attorney: “You do not want to be convicted of murder, do you?”
 

 Counsel for defendant objected to both of these questions. Both objections were sustained by the court, and neither question was ever answered.
 

 Counsel’s' objection is that the questions and answers sought were an attempt on the part of the State to put in evidence the character and reputation of the defendant which had not been put at issue by the defendant himself, and, further, were an attempt on the part of the district attorney to prejudice the jury by asking questions which necessarily called for such evidence.
 

 The district judge having sustained counsel’s objection to the questions, neither of which was answered by the witness who was under cross-examination, we are of the opinion that they did not prejudice the defendant in any way. State v. Curtis, 138 La. 911, 70 So. 878; State v. Fletcher, 127 La. 602, 53 So. 877.
 

 In State v. Curtis [138 La. 911, 70 So. 880], the district attorney asked the de
 
 *546
 
 fendant on cross-examination the following question: “After you had put in 60 days in jail here for carrying a concealed weapon, did you not beat a negro named Carr with a pistol?” To this question the following objection was made: “That, the accused not having attempted to show that he possessed a good character, it was incompetent for the district attorney to establish that he had a bad one; that it was misconduct on the part of the district attorney to ask the question.” The district court sustained the objection, and the question was not answered. We said: “The objection having been properly sustained, the question was not answered, and we think it would be doing an injustice to the intelligence of any jury to assume that they allowed the mere fact that an improper question was propounded to operate to the prejudice of the defendant.”
 

 Moreover, in the instant case, although the district judge sustained the objection to the questions propounded, the first question may not have been improper, for, under the provisions of Article 495 of the Code of Criminal Procedure, a witness in a criminal case, whether he be the defendant or not, may be compelled to answer on cross-examination whether or not he has ever been arrested and if so how many times. We see no difference between the question “Have you ever been before this Court” and the question “Have you ever been arrested and how many times” insofar as either one of these questions puts the character and reputation of the accused at issue.
 

 With reference to the question “You do not want to be convicted of murder, do you”, each and every juror knew that the defendant was on trial charged with that crime and knew that conviction of the crime charged without qualification carried with it the death penalty, and, although the question itself may have been irrelevant, it is equally true that each juror knew the answer. However, we do not think that this question put the character and reputation of the defendant in evidence or did him any harm or prejudice.
 

 Bill of Exception No. 7.
 

 This bill was reserved to the overruling by the lower court of defendant’s motion for a new trial on the ground of newly discovered evidence. In his motion defendant alleges that, if granted a new trial, he will be able to prove certain facts by one M. B. Harper.
 

 Mr. Harper, a deputy sheriff, was a witness for the State at the trial, and an excerpt of his testimony, which is incorporated in the motion and also attached thereto, discloses that he testified that on the morning of January 13, 1945, at about 8 o’clock, a few hours after the homicide had occurred, he, accompanied by a constable, located and arrested the defendant at the home of his cousin, Jefferson Atwood; that at this time the accused was undressed, in bed, and asleep, and the pistol
 
 *548
 
 with which the homicide was committed was lying on the floor near the bed; that they awoke the accused, who informed them at that time that he had killed a man but that he did not know his identity.
 

 Excerpts of the defendant’s own testimony at the trial are also incorporated in the motion for a new trial and attached thereto. This testimony is to the effect that on the night of January 12, 1945, and in the early morning of January 13, the date of .the homicide, the defendant had been drinking beer and some brandy, and that, after, the shooting occurred, he placed the body of the deceased in an automobile belonging to the deceased, drove around for some time, and finally placed the body in a ditch, and that, upon his arrest by the deputy, sheriff Harper, he informed. him where the body of the deceased was and accompanied him to that place. . .....
 

 ' Counsel in his motion alleges that he will be' able 'to prove by Mr. Harper upon a new trial that, when he located defendant at his cousin’s home, he was obliged to shake defendant repeatedly in order to arouse him put of a drunken stupor, and that soon after the arrest defendant was placed in the parish jail by this witness, who would testify that the accused immediately sank into a deep slumber.
 

 The motion further avers that the testimony is material and of great importance for the reason that it would account for the testimony given by the defendant in answer to questions propounded to him by his own counsel and by the attorney for the State on cross-examination as to why he put the body of the deceased in a car and drove to different places, as to why he did not report the tragedy to an officer of the law, and as to why he was in the condition in which he testified he was after the tragedy, he having testified that the killing was an accident and that after the homicide he “went all to pieces”.
 

 The motion further sets forth that, during the time defendant was on the witness stand, all of these questions had been propounded to him, and he answered each one by saying that he did not know. Counsel avers that the testimony of ’ the deputy sheriff could very well be accepted as a good reason why defendant did not know why he did the various things about which he' was asked during his examination in chief and on cross-examination. ■
 

 On the trial of the motion, the deputy sheriff, M. B.- Harper, was called as a witness in behalf of defendant. At that time he practically repeated the testimony given by him-when called-as a witness for the State at -the trial of the case. The testimony given at this time was that he and P. F. Reardon, a constable, arrested the defendant at the home of his cousin, Jefferson Atwood, and that at that time defendant was asleep and was awakened by his cousin; that some 30 or 45 minutes later the defendant was by these two officers incarcerated in the parish jail, and that some 30 minutes after this, when this
 
 *550
 
 witness returned to the jail, he found the defendant asleep. He further testified that he could not detect the odor of liquor about the defendant, but that his movements indicated to him that the accused had been drinking and was under the influence of liquor.
 

 In brief filed in this court, counsel for defendant states that the accused, ^Webber Atwood, does not claim that he was drunk at the time the deceased, Walter Mirl Timms, was killed and that by reason of such intoxication he could not have formed an intent or design wilfully to take the life of the deceased; that no such claim is made in the motion, and that it was never the purpose of the defendant or of his counsel in filing the motion upon the ground of newly discovered evidence to undertake to show that the accused was drunk at the time Timms was killed and that for this reason he should be excused from the crime even though he admits that he killed the deceased. Counsel states that no such claim is made in the motion and no such claim is made now, and that the sole and only purpose of this testimony is to show to the jury on a second trial that several hours after the homicide Atwood was in a dazed, drunk, sleepy, and comatose condition, and was in this condition 20 or 30 minutes after he was put in j ail, and that this condition would explain his testimony to the effect that he went to pieces after the killing and would explain why he answered these questions by saying “I don’t know”.
 

 Under the provisions of Article 511 of the Code of Criminal Procedure, to entitle-an accused to a new trial on the ground- of newly discovered evidence it must affirmatively appear that, notwithstanding the exercise of reasonable diligence, the 'evidence was not known before or during the trial but was discovered since; that the evidence .is not merely cumulative; that it does not merely corroborate or impeach the credibility or testimony of any witness .examined on the trial; that it is so material that it ought to produce a different result from the verdict reached, and that it is admissible.
 

 A careful analysis of the testimony given by the deputy sheriff during the trial and of his testimony given on the trial of defendant’s motion for a new trial discloses that the only new fact brought out by this testimony is that, some 30 minutes after the accused was placed in jail, he was asleep.
 

 The witness, .M. B. Harper, whose testimony to this effect counsel proposes to-introduce in evidence in the event a new trial is granted, testified during the trial before the jury, and nothing prevented defendant’s counsel at that time from examining this witness as far as he saw fit for the purpose of eliciting such evidence, and defendant is not entitled to a new trial on the averment that he has discovered new and additional evidence. State v. Walker, 137 La. 197, 68 So. 407.
 

 If the defendant was so intoxicated after the homicide as not to know why he
 
 *552
 
 put the body in the car and drove around for some time and as to why he did not report the tragedy to an officer of the law, and if such intoxication resulted in his answering questions on these subjects by saying that he did not know why he had acted as he did,
 
 then
 
 this intoxicated condition was known to him on the day of his trial, and he knew that this was the explanation for the answers so given, and for this reason this was not newly discovered evidence, being known to defendant all the while. State v. Cotten, 36 La.Ann. 980.
 

 Furthermore, we are of the opinion that, even if the testimony of the deputy given during the trial of the motion revealed newly discovered evidence, such evidence was not material and would not have a tendency to disprove or explain the homicide, and is only a collateral fact having no material bearing upon the question of guilt or innocence. State v. Posey, 137 La. 871, 69 So. 494.
 

 Moreover, the law is well settled that the granting of a motion for a new trial on the ground of newly discovered evidence is left largely to the discretion of the trial judge, and his refusal to grant such motion will not be reversed unless manifestly erroneous, and we find no error in the ruling complained of in this bill. State v. Heintz, 174 La. 219, 140 So. 28, and authorities therein cited.
 

 552
 

 Bill of Exception No. 8,
 

 This bill was reserved to the overruling by the trial judge of an amended and supplemental motion for a new trial.
 

 The jury which was selected and sworn to try this defendant slept two nights on mattresses placed on the floor of the courtroom, which was located in an upper story of the courthouse at St. Joseph, Louisiana, and due to the location of the courthouse counsel contends in the motion that the jury was not sequestered and removed from the reasonable probability of communication between it or some members thereof and outside parties.
 

 In his per curiam the trial judge states that the jury was kept in the courtroom, or spent two nights there, for the reason that it was the only room available where such a body of men could be kept intact and together at all times. It is to be noted that this room was not used by the jury in its deliberations but merely as sleeping quarters for the members thereof.
 

 The evidence taken at the trial of this motion discloses that the jury during these two nights was in the care and custody and under the charge of two qualified deputy sheriffs, that the jury never at any time separated, and that no communications were had with any outside party.
 

 Counsel does not contend that the jury in this case was separated or that any member
 
 *554
 
 thereof communicated with outside parties, but avers merely that, due to the location and situation of the courtroom itself, the jury was not kept sequestered and removed from the reasonable probability of communication between some member thereof and •outside parties.
 

 In State v. Robertson, 133 La. 806, 63 So. 363, this court held that it was of no moment that the room where the jury deliberated was open to view and that the attention of the jurors was distracted by persons passing near, when there was no proof of any particular fact showing damaging interference with the deliberations of the jury, especially when the jury was in charge of a competent officer, was assigned to the room usually used for deliberating, was not separated at any time, and nothing occurred to interfere with its deliberations.
 

 The holding in that case with reference to the sequestration of the jury during its deliberations is applicable to the sequestration of the jury in this case during the two nights in which it was quartered in the courtroom, for in this case, as in that one, there is no proof whatsoever that the jury communicated with any outside person, being at all times under the charge and in the custody of two competent deputy sheriffs.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 KENNON, J., takes no part.