249 So.2d 109

**STATE of Louisiana**

**v.**

**Charles Edward McCLURE.**

**No. 50911.**

June 7, 1971.

Charles R. Blaylock, Monroe, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Robert W. Kostelka, Dist. Atty., Gilbert T. Brown, Jr., Charles A. Traylor, II, Asst. Dist. Attys., for plaintiff-appellee.

McCALEB, Chief Justice.

Charles Edward McClure is appealing from a conviction on a charge of simple burglary of the Riverfront Cafe, located in West Monroe, Louisiana, pursuant to which he was sentenced to serve nine years in the State Penitentiary. The alleged errors in his trial are contained in eight perfected bills of exceptions.

Bill of Exceptions No. 1 was reserved to the court's overruling a motion to suppress certain evidence which was taken from the person of appellant and from a suitcase under his control. Defense counsel declares that the evidence was obtained by an illegal arrest and search, it being alleged that the arresting officer was without probable cause to make the arrest or to conduct the search of appellant's person and valise.

The whole of the evidence taken in connection with the motion to suppress was not annexed to or made part of the bill of exceptions. Instead, counsel has copied into the bill certain out-of-context excerpts from the evidence which he asserts sustain his contention that the arresting officer was without probable cause. However, the trial judge in his per curiam; taking cognizance of the fact that all of the evidence adduced on the motion to suppress had not been attached to the bill, has set forth a resume of all the facts and circumstances leading up to appellant's arrest, which reveal that there was adequate proof of probable cause.[1]

The facts leading up to the contested arrest and search as detailed in the judge's

1. As will be seen hereafter from a discussion of the other bills of exceptions, a number of them present questions which require an examination of the evidence taken in connection with them. As in the first bill, defense counsel has not included in each bill of exceptions all of the evidence necessary for a determination thereof, but only that part which he, apparently, considers favorable to him. However, in carefully prepared per curiams, the trial judge has supplied the missing facts, as well as giving the reasons for his rulings. The per curiams have assisted us immeasurably in passing on the issues raised by the bills and, because of their clarity in setting forth the facts and factual conclusion of the trial judge, and because the evidence itself cannot be considered by us, we will quote directly from the per curiams whenever necessary to our disposition of the bills of exceptions.

per curiam to Bill of Exceptions No. 1 are as follows:

At about 11:30 P.M. on September 18, 1969, the owner of a taxicab company in West Monroe, acting as dispatcher, instructed one of his drivers to pick up a "fare" who had called in a request. Thereafter the driver reported to the dispatcher by radio that, enroute to the designated "fare", he was hailed by a prospective customer who wanted to know the fare to Minden. The dispatcher told the driver the fare would be $35.00, but the driver replied that the customer did not have that much money. Then, he asked if he could take the customer to Shreveport (an additional 30 miles) for $45.00. The dispatcher was curious as to how the customer could pay $45.00 if he did not have $35.00, and the driver explained that the customer had "scraped up the $45.00, pennies and all." The dispatcher tentatively approved the trip, but instructed the driver to come by the office to fill up with gasoline (he was suspicious and desired to evaluate the situation). The driver quoted the customer as opposing the visit to the office and expressed the desire to buy gas himself elsewhere; but the dispatcher again requested the driver to come by the office. However, he did not report and, despite repeated efforts to reach the cab by radio, the dispatcher could get no answer and heard nothing further from the driver.

Due to these unusual circumstances, the dispatcher reported the matter to the West Monroe City Police. The police immediately contacted the parish sheriff's office, and a city police officer and a deputy sheriff went to the taxi office and discussed the whole affair with the owner-dispatcher. Both of these officers were aware of, and were actually investigating, several recent burglaries committed in that area, in which coin-operated machines of various sorts had been pilfered. They, therefore, issued a general call for the taxicab to be stopped and the occupants checked.

Shortly thereafter, a patrolling officer of the Ruston Police Department (30 miles west), who had heard the bulletin, spotted the cab at a service station alongside Highway I–20. He stopped the driver who pointed out his passenger emerging from the service building. Upon observation the officer found the passenger (appellant herein) quite intoxicated, whereupon he arrested him for public drunkenness. He then searched the person of appellant and found in his pants pockets numerous assorted coins amounting to $60.95, including a number of half-dollars partially rolled with paper on which was written a telephone number. The cab driver told the officer that appellant had paid the cab fare in coins and stated that appellant must have turned off the two-way radio because he did not hear the dispatcher's efforts to reach him.

The driver also, by motion of his head, directed the attention of the officer to appellant's suitcase in the cab. Whereupon, the officer removed the suitcase from the cab and requested appellant to open it, which he did without protest. The open suitcase revealed a vast quantity of coins (later inventoried at $174.98) as well as flashlights, pliers, and at least one screwdriver.

Following his apprehension, appellant was taken to the Ruston police headquarters; the West Monroe and Ouachita Parish authorities were notified, and the two officers, who had earlier contacted the dispatcher, went to Ruston and "re-arrested" appellant, charged him with burglary and brought him to the parish jail in Monroe. While he was being held ·there, a Mr. Harvey Johnson, owner and operator of the Riverfront Cafe in West Monroe, reported the burglary of his place of business, which is located very near the place where appellant hailed the cab, and identified the particular coins and wrappers included in the evidence taken from the person of appellant at the time of the arrest.

Under the above outlined facts, it is clear that the arrest of appellant was valid and legal as was the search of his person. Under Article 213(1) of the Code of Criminal Procedure a peace officer may arrest a person for the commission of a misdemeanor in his presence, provided it be made immediately or on close pursuit. And likewise, under Article 225 of the Code of Criminal Procedure, the peace officer is authorized upon making the arrest to search for and take from the arrestee all weapons and incriminating articles "which he may have about his person."

▆▆▆▆ Although appellant was first arrested for public drunkenness, it is perfectly evident that the chain of evidence leading to his apprehension strongly suggests that appellant had hired the taxicab for the purpose of fleeing from Ouachita Parish. Under these circumstances we are inclined to the view that the search of the appellant's suitcase was not unreasonable but, assuming arguendo that it was and that the introduction of the suitcase and its contents was improper, we think such an error is to be regarded as harmless and covered by the provisions of Article 921 of the Code of Criminal Procedure, in view of the other more damaging evidence connecting appellant with the particular burglary involved herein, and believe that the conclusion of the trial judge to this effect was correct. In his per curiam the judge aptly observed:

"Even if there be some doubt (and this court has none) as to the validity of the search of the suitcase, there was ample evidence otherwise to sustain the conviction. At the trial, witnesses revealed that defendant had rented a room

from his victim at a dwelling situated next door to the burglarized cafe; defendant had been in the cafe shortly prior to its closing; the victim identified at least one wrapper and several coins taken from defendant's pockets; and defendant hailed the cab in the vicinity of the cafe not long after it closed, with the intention of leaving town."

There is no merit in the bill.

Bills of Exceptions No. 2, 3, 4 and 5 were reserved to the trial court's refusal to allow defense counsel's challenge of four prospective jurors.

J. D. Stewart was challenged because he was an employee of the State (Bill No. 2); Robert D. Carter was challenged because he stated, when being examined on his voir dire by defense counsel, that he objected to excessive drinking of alcoholic beverages, and that he, personally, would not be inclined to excuse a man for commission of a crime because of intoxication (Bill No. 3); the competency of Alton Branch was questioned because he was an honorary member of the Monroe City Police Force, it being asserted that, as such, he could not be a fair and impartial juror (Bill No. 4); and George Thomas was opposed because he was a close personal acquaintance of the Clerk of Court.

Article 797 of the Code of Criminal Procedure sets forth the special grounds for challenges for cause. The parts thereof pertinent to this case provide:

"The state or the defendant may challenge a juror for cause on the ground that:

\*   \*   \*   \*   \*   \*

"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

"(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, *is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict*;

"(4) The juror will not accept the law as given to him by the court; \*   \*   \*." (Emphasis ours)

■ This Court has held on numerous occasions that the relationship to the parties named (or other such persons, relationship to whom might result in prejudice) does not, ipso facto, disqualify a person from serving as a juror, but that the connection must be such that one might reasonably conclude that it would influence

the juror in arriving at the verdict.[2] See, for instance, State v. Atwood, 210 La. 537, 27 So.2d 324; State v. Rogers, 241 La. 841, 132 So.2d 819; State v. Hopper, 251 La. 77, 203 So.2d 222; and State v. Douglas, 256 La. 186, 235 So.2d 563.

With regard to the prospective juror, Stewart, we find no error in the trial court's ruling. He was an employee of the Highway Department and stated that he had no personal involvement with any party, witness or court official. Absent personal involvement, we cannot conceive why such an employee would be any more unable to decide a criminal case fairly than a person engaged in similar work in private enterprise. Appellant cites no authority to the contrary, and we have found none.

Similarly, the judge's ruling with regard to Branch was correct. In his per curiam he shows that, although Branch was an "honorary member" of the Monroe City Police, the latter explained that "he had never had any work or other direct association, official or otherwise with the municipal police department (which was not involved in this prosecution); nor had he ever performed any service for the department or any of its members." The judge further observed that "His relationship with the department or its work or its

personnel was no different from that of numerous other citizens who 'carried cards'" and that "There was no ground for fear of prejudice * * *."

Likewise the mere "friendship" of George Thomas with the Clerk of Court did not affect his competence to serve as a juror. The trial judge's per curiam shows that Thomas' examination revealed that he lived in the same neighborhood with the clerk and knew him "fairly well", but that it "otherwise disclosed a perfectly normal, neighborhood social relationship with little knowledge of or interest in [the] clerk's duties on the part of [the] juror. He disclaimed under oath any prejudicial effect stemming from this relationship."

Under these circumstances, we find no ground for disqualification.

Nor do we think that the challenge of the prospective juror Carter was meritorious. As the trial judge states, Carter did indicate that he was to some extent "prejudiced" against the use of alcohol. However, on questioning by the court, he said that he could, and would, follow the court's instructions with regard to intoxication as a defense. As indicated by the court, the supposed basis for the disqualification was grounded on Carter's misunderstanding of a question propounded by de-

2. It should be noted that Article 797(3) does not refer to the relationship to the Clerk of Court who actually has no interest in the outcome of the case, or to employees of the State.

fense counsel which was clarified in interrogation by the judge.

For the foregoing reasons we find no merit in Bills of Exceptions No. 2, 3, 4 and 5.[3]

■ During the trial, defense counsel objected to the introduction into evidence of certain items, for the reason that they were not properly identified—that the chain of preservation in the hands of the police officers had not been demonstrated.[4]

Particularly, he complains that Officer Hoyt Moncrief, in whose care some of the articles reposed for a time, did not testify.

In his per curiam to this bill the trial judge stated:

"Without recitation of details of the evidence, it is sufficient to state that the officers who arrested defendant brought the evidence to the parish courthouse where it was reviewed and identified by the victim and then kept in the evidence locker until produced at the trial. The official custodian of the evidence locker was not on duty in the early morning hours when it was brought in, and it was left with Deputy Moncrief for delivery to the custodian. While each officer did fail on occasion to identify one or more specific items as having been on defend-

ant's person or in his suitcase when he was arrested, *every item was so identified by at least one officer*. Moreover, the total evidence of the circumstances relating to the acquisition, display, inventory, marking, transportation, storage and ultimate production of the evidence successfully established a clear chain from defendant to courtroom and foreclosed any reasonable inference of error or intermingling with other evidence. This being true, and Deputy Moncrief being only an incidental intermediary, *his testimony was not essential*." (Emphasis ours)

There was no error in the ruling permitting introduction of the evidence. Under the circumstances shown by the per curiam, the objection went to the weight of the evidence rather than to its admissiblity. See State v. Robertson, 258 La. 259, 246 So.2d 6, and the cases cited therein.

Bill of Exceptions No. 7 was reserved to the overruling of the appellant's motion for a directed verdict, filed at the close of the State's evidence. There appears to have been no written motion for a directed verdict. However, the bill of exceptions sets forth the ground urged therefor, as follows: (1) The State did not enter any *direct* evidence of unauthorized entry into

3. Of the four jurors, only the name of George Thomas appears on the list of jurors who tried the appellant.

4. The items were those taken at the time of appellant's arrest and a "sucrets" box found in the room which, on the night of the robbery, he had rented from the owner of the burglarized cafe.

the premises named in the bill of information; (2) The circumstantial evidence introduced was not *sufficient* to show an unauthorized entry; (3) Appellant was not proved to be the person described as "the defendant, Mr. McClure"; and (4) That there was no evidence "as to how many, or which persons had authority to enter the building or had authority to grant another person permission to enter the building."

■■■■ With regard to reason No. 1, direct evidence is not necessary but such entry could have been shown by circumstancial evidence. In any event, lack of proof cannot be raised by motion for a directed verdict. Our ruling in State v. Hudson, 253 La. 992, 221 So.2d 484[5] precludes our consideration of this and the other alleged deficiencies inasmuch as they involve factual issues of which we have no appellate jurisdiction.

Besides, the recitation of proven facts set forth in the trial court's per curiam to this bill of exceptions completely negatives and correctly disposes of the grounds urged by appellant, it particularly showing that there was ample evidence to sustain the conviction in all respects.

At the close of the trial, defense counsel submitted to the court a list of eighteen additional special instructions to be given to the jury.

In refusing these special charges as presented, the trial judge observed that all of them, except requested Charge No. 13, were covered by the general charge. Charge No. 13, he said, was denied for the reason that it was not pertinent. Bill of Exceptions No. 8 was reserved to the ruling.

■■■■ In his brief to this Court defense counsel urges that the court erred in failing to give Charges No. 5 and No. 13. Both of these requested charges and the general charge are copied into the bill of exceptions. No. 5 reads as follows:

"If from the evidence submitted to you, it is possible to draw two reasonable conclusions, one of which supports the guilt of the accused, whereas the other supports conduct which is wholly innocent of any crime, then you are charged to return a verdict of not guilty."

There was no error in the refusal of the charge. As stated by the trial judge, the essence of the charge was clearly contained in that part of the general charge dealing with circumstantial evidence.

Requested Charge No. 13 recites that:

"The words 'vehicle, watercraft, dwelling or other structure, movable or immovable' as used in Louisiana R.S. 14:62 imply a vehicle, watercraft, dwelling or

---

5. Since its rendition, the Hudson ruling has been followed in numerous cases decided by this Court. They are compiled in our opinion in State v. Williams, 258 La. 801, 248 So.2d 295 (1971).

other structure that is of sufficient size to contain a living person."

Such an instruction was properly denied. Appellant was charged with the burglary of a building, to-wit: the Riverfront Cafe. The evidence supported the charge, according to the judge's per curiam. Consequently, the special instruction was without relevance.

Bill of Exceptions No. 8 is, therefore, without merit.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, J., concurs for the reasons assigned by TATE, J.

TATE, J., concurs in the result. He does not agree with the statement in footnote 2 that the court cannot consider the evidence on the hearing on the motion to suppress and on the merits, properly identified by reference in the bills, and that the statements in the trial court's per curiam must be accepted for this reason. However, the evidence so attached shows that the trial court's construction of the evidence is correct, and so therefore is our conclusion. Likewise, if the search of the suitcase is illegal, it could not be harmless error. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Nevertheless, although the matter might be close, such search may be justified as inci-

dent to a lawful arrest based on the probable cause known to the West Monroe officers, who had radioed the Ruston police to stop the cab and its occupants. Cf. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 1037, 28 L. Ed.2d 306 (1971) (syllabus 8).

He therefore concurs.