278 So.2d 100 (1973)
STATE of Louisiana
v.
Wilbert RIDEAU.
No. 52492.
Supreme Court of Louisiana.
May 7, 1973.
*101 James A. Leithead, Lake Charles, James A. Wood, Norco, James A. George, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Ossie Brown, Frank T. Salter, Jr., Dist. Attys., J. B. Jones, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant appeals from his conviction of murder, R.S. 14:30, and his sentence to death.
This prosecution is one that has been in the courts for many years. The original indictment arose out of the robbery of the Southgate Branch of the Gulf National Bank in Lake Charles on February 16, 1961. In the robbery, Julia Ferguson was killed.
Defendant was originally tried by a jury in the Fourteenth Judicial District Court, Parish of Calcasieu. He was found guilty and sentenced to death. On appeal to this court, the conviction and sentence were affirmed. 242 La. 431, 137 So.2d 283 (1962). In our opinion, we stated the facts surrounding the offense as follows:
"At approximately 6:55 p. m. Rideau entered the bank and at pistol point forced three employees, Julia Ferguson, Dora McCain and Jay Hickman, to fill a suitcase with money. He forced them into Julia Ferguson's automobile and directed them at pistol point to an uninhabited area northeast of Lake Charles. He then ordered them out of the car, lined them up three abreast, and fired six shots at them. Jay Hickman ran to his right and fell into a bayou. Dora McCain fell directly in front of Rideau on the west shoulder of the road. Julia Ferguson fell near Dora McCain. When Julia Ferguson attempted to rise to her knees, Rideau stabbed her to death with his hunting knife."
The United States Supreme Court reversed the conviction and sentence. Rideau *102 v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). The court held that, due to a televised interview of the defendant, he was deprived of due process of law.
Following the reversal by the United States Supreme Court, the district attorney of Calcasieu Parish moved in the trial court that the defendant show cause why a change of venue should not be ordered to a court outside the range of KPLC-TV, Lake Charles, over which the interview was televised. The defendant joined in the motion. The trial judge held that he was without authority to transfer the case to any parish other than another parish in his district or in an adjoining districtall within the range of KPLC-TVand denied the motion. On appeal, this court reversed the judgment of the trial court and granted the district attorney's motion. Because the Constitution guarantees a speedy public trial by an impartial jury to all accused persons, Art. I, § 9, Louisiana Constitution of 1921, we ordered the trial judge to grant defendant a change of venue to a parish in Louisiana outside the range of television station KPLC-TV, Lake Charles, Louisiana. State v. Rideau, 246 La. 451, 165 So.2d 282 (1964).
Venue was changed to the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge. Defendant was tried in that court, was found guilty, and was sentenced to death. This court affirmed the conviction and sentence. 249 La. 1111, 193 So.2d 264 (1967). The United States Supreme Court denied certiorari. 389 U.S. 861, 88 S.Ct. 113, 19 L.Ed.2d 128 (1967).
Defendant next applied to the United States District Court for the Eastern District of Louisiana for habeas corpus which was granted and "suspended for a period of ninety (90) days, or for such additional time as may be granted the State of Louisiana by this Court within which to re-try petitioner in accordance with law, if it elects to do so...."[1]
Again defendant was retried, convicted and sentenced to death. It is from this third conviction and sentence that Rideau now appeals to this court. During the course of the proceedings, some twenty-eight bills of exceptions were reserved. Those not abandoned and those meriting discussion will be discussed.

Bill of Exceptions No. 1
Bill of Exceptions No. 1 was reserved when the trial judge permitted one of the defendant's court appointed attorneys to withdraw from the prosecution.
*103 Fred H. Sievert, Jr., a member of the law firm of Stockwell, St. Dizier, Sievert and Viccellio, alleged in a motion filed December 15, 1969 that Oliver P. Stockwell was a special assistant attorney general for the State of Louisiana and was engaged on behalf of the State in litigation. Sievert stated that under such circumstances, it appeared to him that he could not continue to represent the defendant.
James A. Leithead, another defense attorney, filed a motion, December 15, 1969, in which he alleged that his law partner was an assistant attorney general authorized to perform the duties of such office. He prayed that he be relieved of his court appointment as counsel.
The trial court denied Leithead's motion, finding that his law partner was an honorary assistant attorney general who would rarely perform services for the State.
Under Article 65 of the Code of Criminal Procedure, Seivert was allowed to withdraw as counsel. Another attorney was appointed by the trial court to assist in representing the defendant.
Article 65 of the Code of Criminal Procedure provides:
"It is unlawful for the following officers or their law partners to defend or assist in the defense of any person charged with an offense in any parish of the state:
"(1) Any district attorney or assistant district attorney; or
"(2) The attorney general or any assistant attorney general."
Defense counsel contend that this article is unconstitutional and violates the Sixth and Fourteenth Amendments to the United States Constitution because it deprives the defendant of one of his counsel who was experienced and knowledgeable concerning the facts and procedure required in this case.
An examination of the record discloses that defendant was well represented by his court-appointed counsel. (The bills of exceptions reserved indicate that counsel were alert, thorough and knowledgeable). Defendant suffered no prejudice because of his counsel. They were able and energetic.
There is no merit to counsel's contention concerning the unconstitutionality of C.Cr.P. art. 65. Bias and prejudice could result if the law did not contain the prohibitions set forth in Article 65. By its provisions, Article 65 precludes an unfair trial and lack of due process. An indigent defendant is not entitled to choose a certain lawyer.
Bill of Exceptions No. 1 is without merit.

Bill of Exceptions No. 2
Bill of Exceptions No. 2 was reserved when the trial court overruled both defense counsel's motion to quash the general venire list, grand jury venire, and indictment of the Grand Jury of Calcasieu Parish and his motion to quash the general venire list and petit jury venire of East Baton Rouge Parish.
With respect to Calcasieu Parish, defense counsel contend that the venire lists did not represent a cross-section of the community and that there was racial discrimination in their composition.
With respect to the Parish of East Baton Rouge, counsel contend that the venire lists did not represent a cross-section of the community.
The majority of the contentions raised by defense counsel in this bill of exceptions were presented on appeal and considered by us in State v. Rideau, 249 La. 1111, 193 So.2d 264, 268 (1967). In deciding adversely to defendant, we stated:
"Fairness in the formation of the jury bodies is a fundamental requirement, long recognized by this Court.... *104 Both the state and federal constitutions require that jury bodies be selected without discrimination because of race. A planned limitation of the number of negroes selected to serve on the grand jury imposed on the basis of race is prohibited....
"The question of whether racial or other discrimination has been practiced in the formation of the jury bodies is one of fact.... The burden of establishing such discrimination rests upon the defendant....
"The Jury Commission of Calcasieu Parish selected the list of Grand Jurors on January 5, 1961, before the commission of the crime charged. Clearly, therefore, no action of the jury officials could have been designed to prejudice the defendant."
Out of an abundance of caution, we have studied this bill and find that defendant has not shown that he suffered any prejudice from the venire selection in Calcasieu Parish. Likewise, he has not shown that he suffered any prejudice from the venire selection in East Baton Rouge Parish. Purposeful discrimination may not be assumed or merely asserted, it must be proved. State v. Grey, 257 La. 1070, 245 So.2d 178 (1971). A defendant who claims discrimination has the burden of establishing that such was the fact. State v. Douglas, 256 La. 186, 235 So.2d 563 (1970). The mere establishment of disparity between the number of Negroes on a venire list and the number of whites does not make a prima facie case of discrimination which must stand where not rebutted by the State. State v. Poland, 255 La. 746, 232 So.2d 499 (1970).
The testimony attached to the bill shows that the venire for East Baton Rouge Parish, at the time of this third trial and immediately prior thereto, represented a cross-section of the community.
Under the facts and circumstances, we find that the trial judge committed no error in denying these motions. Defendant did not bear his burden of proof. He has shown neither prejudice nor violation of constitutional rights.
Bill of Exceptions No. 2 is without merit.

Bills of Exceptions Nos. 3, 4, 5, 6, 7, 8 and 9
Defense counsel avers that on voir dire examination prior to empanelling the petit jury the trial court excused seven prospective jurors for cause when they testified that they would be unable to bring in the death penalty. Defense counsel contends that the action of the trial judge was prejudicial to the defendant.
These bills need not be discussed. State v. Duplessis, 260 La. 644, 257 So.2d 135 (1971) and Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) obviate the necessity. At the present time, the death sentence cannot be imposed.

Bills of Exceptions Nos. 13 and 15
Bills of Exceptions Nos. 13 and 15 were reserved when the trial court denied defense counsel's motions for a mistrial.
During the course of the trial, two witnesses were questioned by the State concerning their possession of evidence. In answering, the witnesses referred to defendant's first trial. One witness testified that he had carried shoes to court during the first trial. The second witness was asked whether money was taken out of the bank at any time. He responded that it had been taken out for the first trial.
Defense counsel contend that the witnesses' answers prejudiced the defendant and influenced the jury's verdict.
We find that no prejudice was suffered by the defendant as a result of the first question propounded because defense counsel had previously opened the door for the line of questioning.
*105 The second question might be classed as erroneous, but it did not demand a mistrial. The trial judge ably admonished the jury as follows:
". . . at this point the Court will instruct and admonish you that you are to disregard the answer to the last question that this witness gave just before you retired. You are further instructed at this time that in this case, as in any criminal case, the accused is presumed to be not guilty or he has the presumption of innocence in his favor and that this presumption of innocence abides with him until such time that you hear competent evidence from the witness stand which convinces you to the contrary and beyond a reasonable doubt. The instruction to disregard the answer to the last question means for your purposes that it is not competent evidence."
Every error in the admission of evidence does not require that a conviction be set aside. C.Cr.P. art. 921; State v. Williams, 260 La. 941, 257 So.2d 668 (1972), Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
We conclude that if any error was committed in the line of questioning by the State, such error was harmless and did not require the granting of defense counsel's motions for a mistrial.
Bills of Exceptions No. 13 and 15 are without merit.
Bills of Exceptions Nos. 10, 11, 12, 14, 16, 17, 18 and 19 have not been briefed. We find that they have been abandoned and do not require discussion.

Bills of Exceptions Nos. 20, 21, 22, 23 and 24
The above bills of exceptions were reserved when the trial court refused to permit defense counsel to adduce testimony with respect to defendant's present sanity and to adduce testimony with respect to the application to defendant of the Durham rule set forth in Blake v. United States, 407 F.2d 908 (5th Cir. 1969) as follows:
"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.
"(2) As used in this Article, the terms `mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."
Defendant argues that he should have been allowed to present evidence to the jury of his present mental conditionevidence the jury might use in considering whether to render a verdict which carried the death penalty. This argument is moot because we do not now have the death penalty.
Neither does the defendant argue, nor does the record reflect, that the defendant was unable to understand or assist in his defense.
The trial judge committed no error in forbidding testimony with respect to the defendant's present sanity. State v. Jenkins, 236 La. 256, 107 So.2d 632 (1959), State v. Rogers, 241 La. 841, 132 So.2d 819 (1961).
The question of insanity at the time of the commission of the crime was a matter for the jury to determine. Louisiana has not adopted the Durham rule, supra, and the trial judge correctly forbade testimony with respect thereto.
Bills of Exceptions Nos. 20, 21, 22, 23 and 24 are without merit.
Bills of Exceptions Nos. 25 and 26 are not argued in brief. We presume that they have been abandoned. They will not be discussed.

*106 Bill of Exceptions No. 27

Bill of Exceptions No. 27 was reserved when the trial court refused to give the jury special charges requested by defense counsel.
Six charges were submitted to the trial judge by defense counsel. Four of the charges related to the defendant's averred insanity at the time of the commission of the offense charged. Charge No. 5 related to a possible verdict of "Not Guilty by Reason of Insanity." Charge No. 6 related to a mitigated verdict.
We find that the trial judge committed no reversible error in refusing to give the requested special charges. His ruling properly recites:
"Request Number 1 was refused for the reason that it is covered in the general charge. Request as to charge number 2 was likewise refused, it being generally covered in the Court's charge and further paragraph 2 of this charge is not the rule applicable in this State. Defendant's request for charge number 3 is refused for the reason that it is covered in the general charge of the Court and is an incomplete statement of the proper charge. Defendant's request for charge number 4 is refused for the reason that in part it's covered by the general charge and the remaining part is not a correct statement of the law of this State. The defendant's request for charge number 5 is refused for the reason that the Court is of the opinion that the dominant theme of this request to charge is a matter that addresses itself to the Court and not to the jury. Article 654 is couched in terms that the Court shall. I do not think the request for charge is a proper matter for jury consideration. I feel that the general charge on the plea of insanity adequately and properly covers the subject matter, as our law is presently postured. See Article 805 of the Code of Criminal Procedure. The defendant's request for charge number 6 is refused for the reason that it is properly covered in the general charge."
Our review of the trial judge's general charge discloses that he adequately instructed the jury on the law applicable to this case. That portion of the requested charges which represented correct statements of the law were contained in the general charge. See, State v. McClure, 258 La. 999, 249 So.2d 109 (1971), State v. Fox, 251 La. 464, 205 So.2d 42 (1967).
Bill of Exceptions No. 27 is without merit.

Bill of Exceptions No. 28
Bill of Exceptions No. 28 was reserved when the trial court denied defense counsel's motion for a new trial.
The motion for a new trial raises matters that were discussed and determined in other bills of exceptions. Consideration of Bill of Exceptions No. 28 is unnecessary.
The mandate of the United States Supreme Court in the case of Furman v. Georgia, supra, requires the imposition of a sentence other than death. Therefore, for the reasons assigned, defendant's conviction is affirmed. The death sentence imposed upon defendant is annulled and set aside, and the case is remanded to the Nineteenth Judicial District Court with instructions that the defendant be sentenced to life imprisonment.
BARHAM, J., dissents and assigns reasons.
CALOGERO, J., concurs with reasons.
BARHAM, Justice (dissenting).
Bill of Exceptions No. 2, considered in the majority opinion, was taken to the trial court's overruling of defendant's motions to quash the general venire list, the grand jury venire, and the indictment by the *107 grand jury of Calcasieu Parish.[1] The majority found the bill to be without merit, stating that the defendant had not shown that he suffered any prejudice from the venire selections and that he failed to carry the burden of proof by establishing that discrimination existed in fact.
It is my belief that the majority applied incorrect standards in deciding the merits of this bill of exceptions. It is axiomatic that a defendant need not show that he has suffered prejudice from the venire selection where it is shown that selection processes result in a constitutionally impermissible jury venire and that these processes do not insure a fair and adequate representation of the community in the general venire. Moreover, it is equally well established that once a prima facie case of purposeful discrimination has been established, the burden of proof shifts to the State to rebut the presumption of unconstitutional selection. Alexander v. Louisiana, 405 U. S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967).
First, it is necessary to examine the facts which the defendant has established to buttress his contention that purposeful discrimination was exercised in the jury selection processes. At the hearing on defendant's motions to quash the various jury venires and the indictment, defendant established through the testimony of Acton Hillebrandt, a member of the jury commission of Calcasieu Parish, that all of the jury commissioners who selected the general jury venire and the grand jury venire existing in Calcasieu Parish at the time of the return of the indictment against the defendant were white.
Although defendant failed to establish the racial composition of the general venire ultimately chosen by the jury commissioners, he did establish that the general jury venire of Calcasieu Parish was personally selected (as opposed to chosen at random) by the jury commission by use of cards which included information showing the race of each potential juror.
Defendant further established that the grand jury venire was also personally selected by the jury commission in such a way that the race of those from whom the selection was to be made was readily apparent during the choice process. The testimony of Acton Hillebrandt clearly showed "* * * all realized that both races should be represented" and that the commissioners knew that Negroes "had to be on there one way or the other". Also established at the hearing, through the introduction as exhibits of a copy of the 1960 census and an affidavit by the register of voters of Calcasieu Parish, were the facts that 25 per cent of the population of the parish 21 years of age or older were black and that approximately 162/3 per cent of the registered voters in Calcasieu Parish were black.[2] Nevertheless, only one black prospective juror was selected for the grand jury venire of 20 (5 per cent). This black served on the grand jury which indicted the defendant.
It cannot be seriously contended that this defendant failed to make out a prima facie case of purposeful racial discrimination in the selection of the grand jury venire. He has established that only 5 per cent of the grand jury venire was black, while the population of Calcasieu Parish 21 years or older was 25 per cent black. That grand *108 jury venire was selected, not at random, but with the commissioners' full knowledge of the race of each person selected. But here, as in Alexander, supra, it is not necessary that we "* * * rest our conclusion that petitioner has demonstrated a prima facie case of invidious racial discrimination on statistical improbability alone, for the selection procedures themselves were not racially neutral".
While there has been much furor about the duty of jury commissioners to be fully cognizant of the make-up of the community which they serve in order to insure fairness in jury selection processes (see Brooks v. Beto, 366 F.2d 1, 5th Cir. 1966, overruling Collins v. Walker, 335 F.2d 417, 5th Cir. 1964), it still cannot be seriously questioned that a deliberate inclusion of blacks on a jury venire may not be made so as to effect a "predetermined or fixed limitation". To put it differently, deliberate inclusion may not be employed as a means to effect exclusion.
It is therefore apparent that the defendant has established a prima facie case of purposeful discrimination, and the record does not disclose anything which may be interpreted as success by the State in effectively discharging the burden of rebutting the presumption of unconstitutional action. This being the case, I believe that we are obligated to follow the United States Supreme Court's decisions in Alexander v. Louisiana and Whitus v. Georgia.
For the reasons set forth above, I respectfully dissent from the majority's opinion.
CALOGERO, Justice (concurring):
The showing made by the defendant at the hearing on the motion to quash the general venire list, and grand jury venire for Calcasieu Parish and indictment rendered by the grand jury for the Parish of Calcasieu, and the showing made to quash the general venire list and petit jury venire for the Parish of East Baton Rouge was entirely inadequate to support his allegations of discrimination.
Since I am in accord with the majority opinion's treatment of the remaining bills of exceptions, I respectfully concur.
NOTES
[1] The judgment and order of the United States District Court of May 12, 1969 recites:

"This matter came on for hearing on petitioner's application for a writ of habeas corpus. He is presently incarcerated at Louisiana State Penitentiary awaiting the execution of the death sentence after having been convicted of murder by a state court jury. The primary ground asserted by petitioner at this hearing upon which he based his application for habeas corpus was that numerous jurors were excused by the State Court, when, upon their voir dire examination, they stated that they did not believe in capital punishment. No further inquiry was made by the court as to whether or not they could, in spite of their beliefs or feelings, vote for the infliction of such a penalty. After hearing arguments of petitioner's counsel, counsel for the state conceded that the case of Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, was controlling here, and that, in accordance with the teaching of that case, the death sentence imposed in this case must be set aside as having, in effect, been imposed by a jury selected in violation of petitioner's constitutional rights. While the Supreme Court of the United States in Witherspoon specifically held that they were setting aside only the sentence and not the conviction in that case, nevertheless, this court concludes that since, in the present case, it was the conviction of the jury that made it mandatory on the court to impose the death sentence on petitioner, the conviction as well as the sentence in this case must be set aside, reserving, of course, to the State of Louisiana the right to re-try petitioner within a reasonable time and in accordance with law."
[1] This bill of exceptions also involves defendant's motions to quash the general venire list and the petit jury venire of East Baton Rouge Parish, where he was tried. Because of the view taken regarding defendant's attacks on the Calcasieu Parish general venire, grand jury venire, and indictment, I find it unnecessary to consider these motions.
[2] The statistics supplied by defendant in brief, and not disputed by the State, are accepted for purposes of exhibiting the racial disparity of the grand jury venire in this case. These figures were contained in defendant's exhibits filed in evidence at the hearing on the motions to quash, but these exhibits are not available for verification of the figures supplied in brief.