**106 So.2d 709**

**STATE of Louisiana**

**v.**

**George FLETCHER.**

**No. 44002.**

Nov. 10, 1958.

Rehearing Denied Dec. 15, 1958.

Eugene Stanley, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard A. Dowling, Dist. Atty., Milton E. Brener, Asst. Dist. Atty., Louis F. Claiborne, Asst. Dist. Atty., New Orleans, for appellee.

McCALEB, Justice.

Appellant was charged, tried and convicted of violating R.S. 40:962 in that he illegally possessed a narcotic drug, to wit, one marijuana cigarette and particles of marijuana. Following a sentence to serve five years in the State Penitentiary at hard labor, he took this appeal relying on four of the five bills of exceptions he reserved at the trial for a reversal of his conviction.[1]

Appellant's main Bill, No. 1, was taken to the denial of his motion to set aside the array and challenge to the special jury venire.

The motion is based on two separate contentions. The first of these, which is that the drawing of the special jury venire for Section "H" of the Criminal District Court during October, 1957 did not conform with the provisions of R.S. 15:191–15:201 and R.S. 13:1382, has been abandoned in consequence of our ruling in State v. Murphy, 234 La. 909, 102 So.2d 61, where the same points were raised and decided adversely to appellant.

The second contention is that there was a systematic and unlawful exclusion of Negroes by the Jury Commission from the general venire and the petit jury panel, which was to try appellant (a Negro), because of their race and color and that this exclusion was accomplished by arbitrary and disproportionate limiting of their number by said jury commissioners, who had not sufficiently acquainted themselves with the qualifications of all potential jurors in the Parish of Orleans.

■ The principle is firmly established in this country that racial discrimination in the selection of juries for the presentment and trial of criminal cases is inimical to constitutional guarantees, the Supreme Court of the United States declaring in its latest opinion (Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 972, 2 L.Ed.2d 991, decided May 26, 1958) that:

"In an unbroken line of cases stretching back almost 80 years this Court has held that a criminal defendant is denied equal protection of law as guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race."

Hence, our only concern here is to determine whether appellant has supported the charges contained in his motion by evidence justifying the conclusion that the fair mode of jury selection provided by our law (R.S. 15:194–196) has been administered in such a manner that gross inequalities have occurred. Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559; State v. Perkins, 211 La. 993, 31 So.2d 188; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; State v. Green, 221 La. 713, 60 So.2d 208.

1. Bill No. 2 has been abandoned.

To sustain his claim, appellant called to the stand Mr. Henry Evans Maloney, Chairman of the Jury Commission, Parish of Orleans,[2] whose testimony establishes the following facts: The names of the persons who are placed on the general venire for jury service in the Parish of Orleans are secured by the Jury Commission from the city directory, the telephone directory and the rolls of the registrar of voters. When the names are secured, a subpoena is sent to each prospective juror to appear before the Commission. On the back of each subpoena is listed certain data which the prospective juror is required to fill out and bring with him at the time of his appearance. These include his name, residence, telephone number, name of his employer, business telephone number, occupation, sex, age and race. He is also questioned as to his citizenship, the duration of his residence in Orleans Parish, whether he is a registered voter, whether he has ever been convicted of a felony or is under indictment, interdiction or other pending charges; whether his hearing or eyesight is impaired, whether he is physically disabled or incapacitated; when he last served on a jury panel in Orleans Parish and the season of the year during which it will be most convenient for him to serve. When this subpoena containing answers to the questions is received, a card is made and the

subpoena is attached thereto. The names and addresses of the persons selected are then inscribed on small pieces of paper and these slips are periodically placed in the general venire wheel. Although the race of the person can be ascertained by looking on the back of the subpoena, Mr. Maloney emphatically stated that the Commissioners pay no special attention to the race of the person; that he has no knowledge of the proportion of white and Negro persons whose names are placed in the wheel and that no effort is made to check and see if the wheel contains the names of Negroes. He further said that he did not know the percentage of the Negro population of New Orleans (it is shown that there are 459,400 whites and 227,300 Negroes by the 1950 census) and that, when notices are sent out, no attempt is made to ascertain the number of white or Negro persons who respond to the subpoenas or thereafter to check the names in the wheel with the subpoenas to determine whether Negroes are represented.

Mr. Edward Rodriguez, Chief Deputy of the Registration Office for the Parish of Orleans, was also called by appellant's counsel and he testified that there are 198,430 registered voters in the Parish and that, of this total, 167,674 are members of the white race and 30,756 are Negroes.

---

2. It was stipulated between appellant's counsel and the prosecution that, if the four other jury commissioners testified, their evidence would be the same as that of Mr. Maloney.

The jury wheel contained 1,549 names but appellant submitted no proof at the hearing of the motion, notwithstanding that evidence was available (by subpoena duces tecum for the records of the jury commission) to show the number of Negroes whose names were included in the wheel. Of the total number contained in the jury wheel, 950 names were drawn and allotted to the eight sections of the Criminal District Court and these persons were summoned for jury duty. Of this number 372 served as jurors, the balance of 578 persons being excused. But here again no attempt was made by appellant to show how many, of those called for jury duty, were Negroes.

▮▮▮▮ The trial judge concluded that neither a systematic inclusion nor exclusion of Negroes had been established by the evidence and we are in accord with this view. It is, of course, settled that an accused claiming a denial of equal protection of the law because of systematic exclusion or inclusion of members of his race has the burden of proving the charges, it being presumed that public officials do their duty in accordance with law. State v. Perkins, supra, and State v. Palmer, 232 La. 468, 94 So.2d 439.

According to the uncontradicted evidence of Mr. Maloney, there does not appear to be any racial discrimination in selection of persons who are ultimately called for jury service in Orleans Parish. The names of these persons are initially secured from the New Orleans City Directory, the Registration rolls and the telephone directory, sources from which it is fair to assume a large segment of qualified Negro citizens, as well as white persons, will be found, the jury commission being without knowledge, at the time the names are obtained, concerning the race of the persons summoned. This method of selection is in keeping with the views expressed by the Supreme Court of the United States in the Cassell, Hill, Eubanks and other cases, as there cannot be purposeful exclusion or inclusion of races unless it is either deliberate or the circumstances are such as to render the conclusion inescapable that the commission has, by its action or inaction, established a pattern which invariably produces discrimination.

The argument of appellant's counsel in this Court seems to be that, since the State did not show that Negroes were included in the general venire and how many of them were called for service on the special petit jury venire, which had been summoned to try appellant, it must be concluded that there was systematic and unlawful exclusion of Negroes.

This contention rests on the faulty assumption that the State was required to show that there were Negroes called for jury service, when the burden was on appellant to show that they were purposely

excluded or included. The difference between this case and the Eubanks, Cassell and other cases relied on by counsel is that it was shown in all those matters that, although the communities in which the juries were drawn contained a substantial number of Negro citizens, no Negroes were ever called for jury service, or a token number were systematically included so as to avoid the charge of a denial of equal protection. In such instances, the Supreme Court has resolved that it will not do for the public officials to say that they are not acquainted with any qualified Negroes because, when it is shown that no Negroes are ever called, it evidences a complete neglect of duty in areas where Negroes compose a large segment of the citizenry.

■ The third bill of exceptions was taken to the refusal of the judge to include a requested special charge submitted by appellant in the general charge and further because the general charge did not include a statement relative to the law of conspiracy.

We find no substance in the bill. An examination of the general charge of the judge shows that it covered the essentials of appellant's requested special charge which was to the effect that, in order for appellant to be held criminally accountable for the narcotics allegedly found on his person, the State must prove that he possessed them wilfully, knowingly and deliberately.

■ The request to include a statement concerning the law of conspiracy in the general charge was likewise properly denied as being irrelevant. Appellant was charged with the substantive offense of possessing narcotics and not with the separate and distinct crime of a conspiracy to possess them, which is composed of different elements.

Bill No. 4 was taken to the denial of appellant's motion for a new trial. This motion merely reiterates the complaints hereinabove considered and rejected and, hence, it presents nothing for further discussion.

In connection with his motion for a new trial, appellant applied for the issuance of a subpoena duces tecum for records of the jury commission relative to the drawing of all petit jury venires, including the lists containing the names of the jurors drawn from the jury wheel for duty during the month of October, 1957 and the subpoenas issued by the jury commissioners to each of the persons whose names appeared on the lists. The State excepted to the application for the subpoena on the ground, among other things, that it was filed too late and, when this exception was sustained, appellant reserved his Bill No. 5.

The exception of the State was properly sustained as the attempt to secure a subpoena duces tecum was merely a continuation after conviction of appellant's motion to quash the general and special jury venires. Appellant had ample opportunity either before or during the hearing of his motion to have these records of the jury commission produced, if his counsel had felt that they would have been helpful to his claim of racial discrimination. No explanation for the delay in making the application is offered but, whatever the reason, it is sufficient to say that it came too late.

Article 202 of the Code of Criminal Procedure (R.S. 15:202) provides that:

"All objections to the manner of selecting or drawing any juror or jury or to any defect or irregularity that can be pleaded against any array or venire must be filed, pleaded, heard or urged before the expiration of the third judicial day of the term for which said jury shall have been drawn, or before entering upon the trial of the case if it be begun sooner, * * *".

While the three day rule here stated has been qualified (see State v. Chianelli, 226 La. 552, 76 So.2d 727 and State v. Butler, 227 La. 937, 81 So.2d 1), the requirement that any such attack must be urged and disposed of before trial remains in full force.

The conviction and sentence are affirmed.

103 So.2d 713