193 So.2d 264

**STATE of Louisiana**

v.

**Wilbert RIDEAU.**

No. 48138.

Dec. 12, 1966.

Rehearing Denied Jan. 16, 1967.

James A. Leithead, Fred H. Sievert, Jr., Lake Charles, Elven E. Ponder, Kenneth C. Scullin, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., 14th Judicial District, Sargent Pitcher, Jr., Dist. Atty., 19th Judicial District, Walter R. Krousel, Jr., Asst. Dist. Atty., 19th Judicial District, for appellee.

SANDERS, Justice.

The present appeal represents the third appearance of this murder prosecution before us. The case was tried initially in Calcasieu Parish, where the crime was committed. After appellate proceedings, the district court there ordered a change of venue to East Baton Rouge Parish. See State v. Rideau, 242 La. 431, 137 So.2d 283, reversed Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663; and State v. Rideau, 246 La. 451, 165 So.2d 282.

Upon trial in East Baton Rouge Parish, the defendant Rideau was convicted of murder and sentenced to death. He has appealed, relying upon thirty bills of exception. As in the prior proceedings, the indigent defendant is represented by court-appointed counsel, who have discharged their duty in the highest traditions of the legal profession.

The prosecution arose out of the robbery of the Southgate Branch of the Gulf National Bank in Lake Charles on February 16, 1961. During the robbery, the culprit forced three employees of the bank, Julia Ferguson, Dora McCain, and Jay Hickman, to accompany him to an uninhabited area near Lake Charles. There he shot them. When Julia Ferguson attempted to rise, he stabbed her with a hunting knife. She died, but the other employees survived. The Calcasieu Parish Grand Jury indicted Rideau for the murder.

### Bills of Exception Nos. 1 and 6

The defendant reserved these Bills of Exception to the overruling of his objection to the change of venue to East Baton Rouge Parish.

The United States Supreme Court reversed the initial conviction of the defendant in Calcasieu Parish because, after his arrest, he had been interviewed in television newscasts over Channel 7, KPLC at Lake Charles, during which he admitted guilt. Rideau v. State of Louisiana, supra. The United States Supreme Court said:

"* * *[D]ue process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised 'interview'."

To implement this decision, this Court ordered the trial judge to grant a change of venue "to a parish in this state outside ■■■■

the range of those reached by televised broadcasts beamed by KPLC–TV, Lake Charles, Louisiana." See State v. Rideau, 246 La. 451, 165 So.2d 282.

The defense produced five witnesses who testified they could receive telecasts from KPLC–TV in East Baton Rouge Parish. Their testimony related to 1964, not to 1961 when the defendant was interviewed. The defense offered no witness who had actually seen the televised interview in East Baton Rouge Parish.

■ The trial judge properly overruled the objection to the trial in East Baton Rouge Parish. The defendant made no showing the community was exposed to the televised interview in violation of defendant's constitutional rights.

### Bill of Exception No. 2

The defendant reserved this Bill to the denial of his motion to quash the indictment, the Calcasieu Parish general venire list, and the venire box because the general venire had come primarily from a list of registered voters and discrimination had been practiced in selecting the Calcasieu Parish Grand Jury that indicted the defendant. The defendant charged that there had been a systematic token inclusion of Negroes on the Grand Jury.

■ Fairness in the formation of the jury bodies is a fundamental requirement, long recognized by this Court. See, e. g.,

State v. Goree, 242 La. 886, 139 So.2d 531 and State v. Anderson, 205 La. 710, 18 So. 2d 33. Both the state and federal constitutions require that jury bodies be selected without discrimination because of race. A planned limitation of the number of negroes selected to serve on the grand jury imposed on the basis of race is prohibited. Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; State v. Green, 221 La. 713, 60 So.2d 208; State v. Perkins, 211 La. 993, 31 So.2d 188.

■ The question of whether racial or other discrimination has been practiced in the formation of the jury bodies is one of fact. Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; State v. Mack, 243 La. 369, 144 So.2d 363; State v. Goree, 242 La. 886, 139 So.2d 531. The burden of establishing such discrimination rests upon the defendant. Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; State v. Fletcher, 236 La. 40, 106 So.2d 709.

■ The Jury Commission of Calcasieu Parish selected the list of Grand Jurors on January 5, 1961, before the commission of the crime charged. Clearly, therefore, no action of the jury officials could have been designed to prejudice the defendant.

The defendant called only one jury official on the motion to quash: Acton Hillebrandt, Clerk of Court and ex-officio member of the Jury Commission. He testified that, in forming the jury bodies, he considered the voter registration list, the city directory, and occasionally persons unlisted in either of these. He further testified no racial discrimination was practiced in forming the jury bodies. One negro served on the Grand Jury that indicted the defendant.

We conclude, as did the trial judge, that the defendant has failed to establish discrimination or any impropriety in the formation of the jury bodies.

*Bills of Exception Nos. 3, 25, and 26.*

These Bills relate to defendant's sanity at the time of the commission of the offense.

The district court for Calcasieu Parish appointed a lunacy commission before the first trial. That commission reported that the defendant was sane. See State v. Rideau, 242 La. 431, 137 So.2d 283.

Prior to arraignment in East Baton Rouge Parish, defendant moved for the appointment of a second lunacy commission to investigate both the defendant's present sanity and his sanity at the time of the crime, and for a hearing to determine defendant's mental condition. The court granted the motion as to present sanity but rejected it as to insanity at the time of the crime. To the partial rejection of his motion, defendant reserved Bill of Exception No. 3.

■■ We find no merit in this Bill. The ruling of a trial judge denying the ap-

pointment of a lunacy commission will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. LSA–R.S. 15:268; State v. Green, 221 La. 713, 60 So.2d 208, and the authorities therein cited. Contrary to defendant's contention, this rule of discretion is not affected by the provisions of LSA–R.S. 15:296, relating to procedure in the court of transfer. Under the circumstances, we see no abuse of the trial judge's discretion. Unlike present insanity, insanity at the time of the crime is an issue for the jury. The defense presented no compelling reasons for the appointment of a lunacy commission to investigate it. Moreover, the report of the first commission was available to the defense.

▮ The defendant reserved Bill No. 26 to the state's failure to produce all members of the sanity commission as witnesses at the trial. He relies upon LSA–R.S. 15:- 268, providing that the physicians appointed "shall be summoned to testify at the trial and shall be examined by the court * * "

Two of the three members did testify. The Per Curiam of the trial judge reports that the third member is now a resident of the state of Florida and unavailable for compulsory process. Under these circumstances, we find no error.

Defendant reserved Bill No. 25 to the overruling of his objection to the admission in evidence of the Report of the Lunacy Commission.

▮ The written report of a lunacy commission is inadmissible in evidence at the trial, when the physicians who made the report are present and testify. State v. Snowden, 198 La. 1076, 5 So.2d 355. During cross-examination, however, defense counsel elicited from the commission members substantial testimony as to the content of the report. On redirect examination, the state offered the report in evidence in connection with this testimony. Having opened the door through interrogation, the defense cannot now be heard to complain. See State v. Elias, 230 La. 498, 89 So.2d 51, and State v. Sinigal, 138 La. 469, 70 So. 478.

### Bill of Exception No. 4

▮ The defendant reserved this Bill to the overruling of its motion to quash the General Venire and Petit Jury Venire in East Baton Rouge Parish. The defense argues that the names in the general venire were taken from the registration rolls, and this system discriminated against negroes.

The trial judge overruled the motion because of the absence of a showing of racial discrimination in the registration of voters.

We sustain this ruling. Defendant made no showing of voter discrimination. Moreover, the evidence establishes that the jury bodies were formed without discrimination because of race.

*Bill of Exception No. 5*

The defendant reserved this Bill when the court sustained the state's objection to the introduction of certain records of television station WBRZ of Baton Rouge. The avowed purpose of the offer was to establish that defendant's televised confession had been given wide publicity in Baton Rouge. ·

The ruling of the trial judge was correct. The defense failed to lay a proper foundation for their introduction. The foundation witness testified he was unable to say whether or not these newscasts had been used over the station.

*Bills of Exception Nos. 7, 8, 9, and 28.*

The defendant reserved these Bills to the overruling of a motion to quash the indictment filed on the day of trial. The motion was grounded upon a misjoinder of offenses in the indictment. Count one charged murder; count two, kidnapping; and count three, armed robbery.

As at the first trial (See State v. Rideau, 242 La. 431, 137 So.2d 283), the court ordered the state to elect and the state elected to prosecute the charge of murder.

The defense contends that, since LSA–R.S. 15:217 prohibits charging more than one crime in the same indictment, the indictment was null and void and could not be amended by an election. To do so, defendant contends, deprives him of the right of indictment by a Grand Jury in violation of Article I, Section 9 of the Louisiana Constitution.

We find no merit in this argument. LSA–R.S. 15:226 authorizes the court to compel the district attorney to elect on which of the several charges he will proceed. See State v. Jones, 176 La. 723, 146 So. 682; and Slovenko, The Accusation in Louisiana Criminal Law, 32 Tul.L.Rev. 47, 70–88. The election having been made, the eliminated charges were withheld from the jury's view by superimposing a blank sheet of paper over them under the court's direction. When severed, the murder charge remained an indictment returned by the Grand Jury.

*Bill of Exception No. 10*

The defendant reserved this Bill to a gratuitous remark of the district attorney made during voir dire examination of a prospective juror that he, the district attorney, was a member of the Citizen's Council. The court immediately instructed the jurors to disregard this statement.

As a general rule, prompt instructions by the court to disregard removes the prejudicial effect of an improper statement of a prosecuting officer during the course of the trial. State v. Brazile, 234 La. 145, 99 So.2d 62; State v. Brown, 166 La. 43, 116 So. 588.

The rule, in our opinion, applies here. The Bill of Exceptions is without merit.

*Bills of Exception Nos. 11 and 27*

■ These Bills relate to the plea of not guilty by reason of insanity.

The defendant reserved Bill of Exception No. 11 after the court disallowed the following defense query addressed to prospective jurors:

"Q. Gentlemen, if the Court instructed you that the law is that if you found evidence of mental disease or mental deficiency of the accused at the time of the commission of this alleged offense, although it is not sufficient to acquit him, in your minds, by reason of insanity, it could nevertheless, be considered in determining whether or not the accused, Wilbert Rideau, had a specific criminal intent to kill or inflict great bodily harm, could you accept that law and apply it to this case?"

The defendant reserved Bill of Exception No. 27 to the court's rejection of defendant's requested special charges 7, 8, 12, 13, 14, and 17.

Requested charge No. 7 reads:

"If you believe that the evidence is not sufficient to convince you that the accused was mentally diseased or mentally defective to an extent which would constitute legal insanity as to the killing of a human being at the time of the homicide, you may consider any evidence of his mental condition in determining whether or not the accused at that mo-

ment had a specific criminal intent to commit great bodily harm or to kill."

The remaining charges dealt with various tests or explanations of insanity, including the irresistible-impulse test of United States v. Currens, 3 Cir., 290 F.2d 751 and the product test of Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430.

The ruling of the trial judge in disallowing the query and special charges was correct. They contained an improper statement of the law of insanity in Louisiana.

LSA–R.S. 14:14 provides:

"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."

This codal article sets forth the exclusive test for insanity in Louisiana criminal proceedings: the right-from-wrong test. The trial judge properly instructed the jury concerning this test in his general charge.

■ Under this article, a mental defect or disorder short of insanity as thus defined cannot serve to negate specific intent and reduce the degree of the crime. See Fisher v. United States, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382; Fox v. State, 73 Nev. 241, 316 P.2d 924; Commonwealth

v. Woodhouse, 401 Pa. 242, 164 A.2d. 98; and 22 La.L.Rev. 664. We are aware, of course, that the so-called "partial insanity" doctrine has been adopted in several states. See, e. g., State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908. However, we are bound by the codal provision, exempting one from criminal responsibility only if he is incapable of distinguishing right from wrong.

For similar reasons, the other tests of insanity urged upon the court by the defendant are also foreign to our law.

### Bills of Exception Nos. 12 and 13

◼ Bills 12 and 13 were reserved when the court disallowed a challenge for cause by defendant of prospective juror Young and declined to permit defendant to ask him whether any of his friends or associates were members of the Ku Klux Klan.

We find no error in these rulings. When the testimony of this juror is considered as a whole, as must be done, it indicates that the juror could render an impartial verdict in the case.

The trial judge permitted the defense to ask the prospective juror whether he was a member of the Ku Klux Klan (See State v. Hills, 241 La. 345, 129 So.2d 12) and whether any member of his family was a member. The court committed no error in ruling out the question as to friends and associates of the juror. Such a ques-

tion transcended the broad limits of voir dire examination.

### Bill of Exception No. 14.

◼ Defendant reserved this Bill to remarks of the District Attorney in his opening statement that the defendant had robbed the Gulf National Bank Branch and kidnapped three of its employees.

It is true, of course, that the defendant was not being tried for either robbery or kidnapping. But these events were part of the transaction that culminated in the homicide for which the defendant was on trial. Evidence of the entire transaction was admissible to establish motive and intent for the murder of the employee, Julia Ferguson. LSA–R.S. 15:446; State v. Bailey, 233 La. 40, 96 So.2d 34, 69 A.L.R.2d 340.

### Bill of Exception No. 15

◼ During the trial, over defense objection, the court permitted Jay Hickman, a state witness, to testify that after the defendant shot him, he heard two more shots and "felt that one of these shots was evidently for Mrs. Ferguson and one of them for Mrs. McCain."

The defendant contends the testimony was inadmissible speculation.

We have concluded the testimony was properly admitted to show the witness's state of mind and to explain why he later

returned to the scene to search for the two women.

### Bill of Exception No. 16

The defendant reserved this Bill to the overruling of his objection to the testimony of state witness Hickman concerning the bank robbery. As we stated in discussing Bill of Exception 14, the bank robbery formed part of the transaction in which the homicide was committed. Evidence of the bank robbery was admissible to establish intent and motive for the murder.

### Bill of Exception No. 17

The defendant reserved Bill No. 17 when the court allowed the state to introduce a photograph of the deceased victim. The defense argues that it offered to stipulate as to the nature of the wounds and cause of the death, and that the gruesome picture only served to prejudice the minds of the jurors.

The state, of course, is required to prove the identity of the deceased, the death, and the cause of the death. The photograph was strongly probative of these facts. The defense cannot control the state's method of proof by an offer of stipulation.

A death scene, of course, has its gruesome aspect. But the relevance of the photograph outweighed its emotional danger. See State v. Morris, 245 La. 175, 157 So.2d 728.

The Bill of Exception is without merit.

### Bill of Exception No. 18

After Dora McCain had been shot, she made her way to the home of Earl Bias about one-half mile from the scene. The court permitted the witness Bias to testify that she said to him "please help, because I've been shot." The record reflects Dora McCain, wounded and bleeding, made the statement within thirty minutes after the shooting. To this testimony, the defendant reserved Bill of Exception No. 18, contending it was prejudicial hearsay.

We have serious doubts that the testimony was hearsay. The *fact of utterance* had to be shown to explain the actions of the witness in carrying Dora McCain to a service station to reach a telephone. At this point, the truth of the utterance is of no concern. In any event, however, the admission of the statement was neither prejudicial nor reversible error, because Dora McCain, without objection, testified to the same utterance. LSA–R.S. 15:557.

### Bills of Exception Nos. 19 and 20

The defendant reserved these Bills to the overruling of a defense objection to the admission in evidence of a photograph of a knife. Defense contends that a proper foundation was not laid for the introduction of the photograph.

At the first trial of the defendant in Calcasieu Parish, a hunting knife found near the scene of the crime was admitted in evidence. See State v. Rideau, 242 La. 431, 137 So.2d 283. Prior to the present trial, the knife was misplaced or lost. Two deputy sheriffs testified that the photograph was that of the original knife, found near the scene of the crime. A pawn shop operator testified that the knife in the photograph was identical to the knife he sold the defendant prior to the crime. The Parish coroner testified as to the depth of the stab wounds.

The foundation, in our opinion, was sufficient to admit the photograph. It was for the jury to determine the weight to be accorded to the evidence.

■■■ The defense moved for a mistrial when Deputy Leroy Authment [1] testified as follows in connection with the foundation:

"Q. I show you this photograph marked S–11 for identification. It has not been introduced yet. *Without identifying it,* do you recognize this object in that photograph? (Italics ours).

"A. Yes, sir, that's a knife."

The court denied the motion for a mistrial, but instructed the jury to disregard the answer as not responsive to the question.

We find no error in this ruling. Since the district attorney specifically cautioned the witness not to identify the object, the answer was unresponsive. We have often stated that a criminal conviction cannot be vitiated by volunteered testimony for which the state is not responsible. State v. Donaldson, 238 La. 265, 115 So.2d 345, and the authorities therein cited.

*Bills of Exception Nos. 21 and 22*

■■ The defendant reserved these Bills when the trial court overruled his objection to the testimony of the Clerk of the Supreme Court and a Deputy Clerk of the Court of Calcasieu Parish to show the circumstances under which the knife shown in the photograph State Exhibit 11 had been misplaced.

The state was required to explain the absence of the knife. We perceive no error in the ruling.

*Bill of Exception No. 23*

■■ On the issue of insanity at the time of the crime, the defense called Dr. Victor Gonzales, a psychiatrist. He testified that he had received background history of the defendant from several sources, including the defendant's mother. When the defense sought to show by the expert certain facts in the mother's statement, the court sustained a state objection. The defense then reserved Bill No. 23.

---

1. The Bill of Exception recites that the witness was Deputy Sam Mazilly. But this is apparently an error (Tr. 941).

We find no error in the ruling. The court permitted the psychiatrist to testify he received a background history from the mother. But the facts of which only the mother had personal knowledge required the mother's testimony.

*Bill of Exception No. 24*

 Bill of Exception No. 24 was reserved during the state's cross-examination of Dr. Gonzales, the defendant's expert witness on the issue of insanity. Over defense objection, the psychiatrist was permitted to read to the jury certain inculpatory statements of defendant made to law enforcement officers. The judge restricted the introduction of the statements to the issue of insanity and instructed the jury to consider them only for that purpose and not for determining guilt.[2]

The defendant contends the ruling was prejudicial error, since the state placed the inculpatory statements before the jury without mentioning them in its opening statement or laying a proper foundation by showing they were voluntary. The defendant relies upon State v. Palmer, 232 La. 468, 94 So.2d 439; State v. Ward, 187 La. 585, 175 So. 69; and State v. Hayes, 162 La. 310, 110 So. 486.

The state contends the defense opened the door for the introduction of the statements by interrogating the expert witness as to their content and nature to support his medical findings.

In his Per Curiam, the trial judge states that the defense opened the door for the admission of these statements by reading portions of them in the direct examination of the expert.

We have reviewed the testimony made part of the bill and find the judge erred in stating that the defense read portions of these statements. Nonetheless, we also find the defense opened the door to their admission. The testimony reflects that the defense interrogated Dr. Gonzales as to the content and nature of the statements.[3]

---

2. "THE COURT: Gentlemen of the jury, I want to instruct you that these two statements which were read to you are to be considered only for the purpose of determining sanity and not for the purpose of determining the guilt or innocence of the defendant. * * * "

3. "A You want me to talk about the contents of those statements?
"Q Yes, sir.
"A He said in those statements, he said that he had had some drinking— that he had done some drinking the day before, he drank a pint of Vodka and several highballs. That was on the 15th, then on the 16th, he said in those statements that he informed his employer that he felt bad and that he wanted the rest of the day off. He left in the early afternoon. After returning from lunch, he told her he felt bad and later described this as a headache that he had had and he left the place of his employment about 2:45 and he went to sleep in a car and these two items are the ones that I thought were significant, the sleep and the headache.
"Q And he had something to drink the night before?
"A . I didn't hear you.

Since the defense introduced a portion of these statements, as well as testimony describing them, to support the expert's findings, the state could not be precluded from offering the complete statements on the issue of insanity. To properly resolve the issue, the jury was entitled to more than a broken picture.

 Under a well-established rule, if the defense puts into evidence part of a document or statement, detrimental to the prosecution, the prosecution may then introduce the entire item to negate adverse inferences which might arise from the fragmentary offering. State v. Lee, 130 La. 477, 58 So. 155; United States v. Corrigan, 2 Cir., 168 F.2d 641; Wigmore On Evidence (3rd ed.) §§ 2113, 2115, pp. 523–532. See also State v. Elias, 230 La. 498, 89 So.2d 51; State v. Smith, 144 La. 801, 81 So. 320; and State v. Bates, 140 La. 833, 74 So. 165.

The Court in United States v. Corrigan, supra, explained the rule as follows:

"The doctrine of 'opening the door' is an application of the principle of 'completeness'; that is, if one party to litigation puts in evidence part of a document, or a correspondence or a conversation, which is detrimental to the opposing party, the latter may introduce the balance of the document, correspondence or conversation in order to explain or rebut the adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary."

We find inapposite the decisions in State v. Palmer, State v. Ward, and State v. Hayes, supra, on which defendant relies. In those cases, the defense did not introduce in evidence fragments of the defendant's statement as part of its own proof. Moreover, the courts there admitted the statement without restriction, rather than on an issue of insanity.

We conclude the Bill of Exception is without merit.

*Bills of Exception Nos. 29 and 30*

The defendant reserved these Bills to the denial of a motion for a new trial and a motion in arest of judgment. The motions reurge the objections raised in the bills previously discussed. Hence, they present nothing further for review.

For the reasons assigned, the conviction and sentence are affirmed.

"Q He had something to drink the night before?
"A The night before, he had had some drinks.
"Q Did he say what he had to drink?
"A Yes, he drank a pint of Vodka and several highballs.
"Q Doctor, with regard to those three statements, isn't it true that the statements show more knowledge, as they are taken later? The first statement is basically a vague statement, the second one is much more concrete, and the third one is quite elaborate?
"A That's true. The initial one given to the Sheriff's men was less complete or less detailed than the one he gave to the F.B.I. men, which was about five days later. * * *"