SANDERS, Justice.
 

 By Bill of Information, the State charged J. C. Curry with aggravated criminal damage to property in violation of LSA-R.S. 14:55. The court overruled the defendant’s motions to quash the petit jury venire and for a change of venue. After trial, the jury returned a verdict of guilty. The judge sentenced the defendant to a term of 12 years in the Louisiana State Penitentiary.
 
 [1]
 

 The defendant has appealed, relying upon four bills of exceptions reserved in the trial court.
 

 The background facts may be briefly summarized. During 1970, several incidents of racial violence erupted at Homer, Louisiana. On the night of June 12, 1970, Lynn Albritton drove his automobile into the Rose Oil Station at Homer. In the automobile with him were Marion Keene and Steve Middleton. Although the service station attendant had already begun to close for the night, he moved toward the
 
 *285
 
 automobile. When he had reached a point between the right door and hood, several shots were fired from behind the service station, striking the automobile. Keene and Middleton were hit by shotgun pellets. Albritton quickly drove away. The three reported the incident to the police and sought medical attention.
 

 Law enforcement officers later arrested J. C. Curry, the present defendant, and several others for the offense.
 

 BILL OF EXCEPTIONS NO. 1: Motion to Quash Petit Jury Venire.
 

 Defendant filed a motion to quash the petit jury venire, on the ground that the names for the general venire were taken from the Voter Registration Rolls, that the Rolls did not adequately reflect a proper percentage of “the classes to which defendant belonged,” and that women were excluded from the jury bodies. The trial judge held an evidentiary hearing and overruled the motion.
 

 Fairness in the selection of jury bodies is a fundamental requirement of both the state and federal constitutions. In the trial of a negro defendant, the jury must be selected without discrimination against members of the defendant’s race. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966), cert. den. 389 U.S. 861, 88 S.Ct. 113, 19 L.Ed.2d 128; State v. Mack, 243 La. 369, 144 So.2d 363 (1962), cert. den. 373 U.S. 917, 83 S.Ct. 1306, 10 L;Ed.2d 416.
 

 In State v. Mack, supra, this Court stated :
 

 “The law is well settled that a defendant is denied the equal protection of the laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race. Such racial discrimination is likewise prohibited by state law. The law requires that a jury be selected without regard to race. This Court has recognized and applied these principles.” (footnotes omitted).
 

 The order convening the Jury Commission in the present case directed the Commission to select the general venire of three hundred from the Registration Rolls in the following manner:
 

 “The number to be selected shall be divided into the total number of names on said list and the quotient obtained therefrom shall be the number used for the constant arithmetical progression. To obtain the first number on the list, a group of numbers equal to the arithmetical progression to be utilized shall be mixed and placed into, á box and therefrom one number shall be drawn. This number shall constitute the first name, to be selected,, and thereafter each name
 
 *287
 
 shall be selected according to the arithmetical progression, provided that should any name so selected be the name of a person known by the Clerk of Court or either of the Jury Commissioners to be a woman who has not expressed a willingness to serve as a Juror in accordance with Louisiana Code of Criminal Procedure, Article 402, or persons exempt from Jury service in accordance with Article 403, or a person who does not qualify for jury service under Article 401 (General Qualification of Jurors), then and in that event, the name to be selected shall be the next name immediately above who would not be subject to disqualification or exempt from Jury service for any of the reasons enumerated in Article 401, 402 and 403. For example,- should the list of registered voters -be composed of 6300 names, the number 300 would be divided into 6300, and the answer obtained, 21, would constitute the arithmetical progression. The numbers 1 through 21 would then be placed into a box and a number selected at random therefrom in order to obtain the first name to be selected from the list of registered voters. Should the number so selected be number T4,’ the fóurteeíith name on.the list of registered voters- would be placed into the General Venire-Box along with the names of ev
 
 ét</
 
 twenty-first' person thereafter.' In the évérit that the arithmetical progression should stop on a person who is not qualified or exempt from Jury duty in accordance with Articles 401, 402 and 403 of the Louisiana Code of Criminal Procedure, the Clerk and Jury Commission shall then go back up the list and obtain the name of a person who is not exempt or disqualified. Thereafter the arithmetical progression shall continue from the name upon which it first stopped.”
 

 The record reflects that the system was faithfully followed. Clearly, no racial discrimination was practiced in the selection of the names from the Registration Rolls for the general venire.
 

 No racial discrimination occurred in the formation of the petit jury venire or panel. The names for the petit jury venire were drawn from the general venire “indiscriminately and by lot.” See LSA-C. Cr.P. Art. 416. In selecting the trial jury panel, the names were drawn “indiscriminately and by lot in open court.” See LSA-C.Cr.P. Art. 784.
 

 The sole question is whether or not the use of the Voter Registration Rolls as the source of names for the general venire rendered the jury bodies unrepresentative and discriminatory.
 

 The defendant contends that the use of the Registration Rolls Undermines the fairness of -the petit jury bodies, be
 
 *289
 
 cause tKe rolls did not adequately reflect the racial composition of the parish.
 

 The State, on the other hand, asserts that no showing has been made of racial discrimination in voter registration, that the Registration Rolls represent a rough cross-section of the community, and that the jury bodies are not constitutionally discriminatory merely because they do not reflect the exact racial percentages of the general population.
 

 The record discloses that the Voter Registration Rolls were composed of
 
 66%
 
 white voters and 34% Negro voters. The names of 2,768 Negroes appeared on the rolls. The 1970 projected census for Claiborne Parish shows that 48.3 percent of the population are Negroes. Among the adult males, 44.6 percent are Negroes.
 

 Seven Negroes were on the petit jury venire of thirty for defendant’s case.
 

 We have often held that, absent a showing of racial discrimination in voter registration, that the Voter Registration Roll is a proper source of names for the general venire. See State v. Poland, 255 La.
 
 746,
 
 232 So.2d 499 (1970); State v. Rideau, supra.
 

 In State v. Poland, supra, we reviewed the jurisprudence and stated:
 

 “It--is argued the jury was selected sólély-from the parish list of registered Voters and the federal courts held portions of Louisiana laws controlling such registration to be illegal and unconstitutional in United States v. Louisiana, D.C., 265 F.Supp. 703; Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709, and United States v. Clement, 5 Cir., 358 F.2d 89.
 

 “These authorities do not sustain the contention -of defense counsel. The legality of the jury venire of East Baton Rouge Parish under Louisiana voter registration laws was not involved in any of these cases; nor were provisions of Louisiana law under which this registration roll was made up declared therein to be illegal and/or unconstitutional. Furthermore, the same argument that the practice of taking names in the general venire from the registration rolls constituted discrimination against Negroes was advanced in State v. Rideau, 249 La. 1111, 193 So.2d 264. This court, upholding the lower court’s ruling that defendant made no showing of racial discrimination in the registration of voters, pointed out, further, that the evidence established the jury bodies were formed without discrimination because of race. The Supreme Court of the United States refused to review this holding. 389 U.S. 861, 88 S.Ct. 113, 19 L.Ed.2d 128.
 

 “Additionally, the authorities relied on by defense counsel do not support their contention- under these same bills that defendant made out a prima facie .case
 
 *291
 
 of discrimination against Negroes which must stand since this evidence was not rebutted by the state, i. e., Coleman v. Alabama, 389 U.S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22, and Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25.
 

 “The evidence offered by defendant in this respect consisted of (1) an affidavit reflecting that during the months of May, June, and July 1966 the registration rolls of East Baton Rouge Parish consisted of approximately 85,500 voters, of which some 15,000 or 17.8% were colored; (2) the 1960 census of the parish; and (3) a stipulation to the effect that if the clerk of court of the parish were called as a witness he would testify the venire was made up solely of names on the registration rolls ‘and that this selection had been without regard to race, color or creed.’ ”
 

 “The cases of Coleman v. Alabama, 389 U.S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22, and Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25, do not sustain the defense contention that the mere establishment of a disparity between the number of Negroes on the venire list makes a prima facie case of discrimination that must stand where not rebutted by the state. In both cases the United States Supreme Court held the presumptions and factors employed by the state courts to overcome the prima facie showing made out by the defense under the particular facts established were not acceptable, and the cases were remanded for further proceedings consistent with this holding.”
 

 We know of no constitutional requirement that the jury lists be a perfect mirror of the racial composition of the general population.
 

 Recently in State v. Grey, 257 La. 1070, 245 So.2d 178 (1971), we stated:
 

 “Counsel for defendants has established two facts basic for the contentions raised in this bill: About 60 per cent of the population of the parish are Negroes, and of the 325 persons whose names were on the general jury venire 24 per cent were Negroes. From these facts he argues that such a disproportionate percentage of Negroes on the jury list could result only from systematic discrimination against them.
 

 “Purposeful discrimination, however, may not be assumed or merely asserted; it must be proved. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In the Swain case the United States Supreme Court affirmed the conviction, by an all-white jury, of a Negro who alleged that he was denied the equal protection of the laws by discriminatory jury selection. The court said that racial discrimination resulting in exclusion from jury service of otherwise
 
 *293
 
 qualified groups not only violates our Constitution but is at war with our basic concepts of a democratic society and a representative government; that therefore jurymen should be selected as individuals on the basis of individual qualifications and not as members of a race. It stated:
 

 . . a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. * * * Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. * * * ’ ”
 

 Equally without merit is the allegation that the exclusion of women from the jury bodies deprived the defendant of his constitutional rights.
 

 The State concedes that women were excluded, but the defendant has made no showing that any of them filed a declaration for jury service as required by law.
 

 Article 402 of the Louisiana Code of Criminal Procedure provides:
 

 “A woman shall not be selected for jury service unless she has previously filed with the clerk of court of the parish in which she resides a written declaration of her desire to be subject to jury service.”
 

 In Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1971), the United States Supreme Court upheld the constitutionality of such a provision. We have also upheld the constitutionality of the provision. See State v. Pratt, 255 La. 919, 233 So.2d 883 (1970); State v. Copeland, 255 La. 91, 229 So.2d 710 (1969); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); State ex rel. Barksdale v. Dees, 252 La. 434, 211 So.2d 318 (1968).
 

 We conclude that the motion to quash the petit jury venire is without merit.
 

 BILL OF EXCEPTIONS NO. 2: Change of Venue.
 

 The defendant filed a motion for a change of venue, alleging that it was impossible for him to receive a fair trial in Claiborne Parish. The trial judge held an evidentiary hearing on the motion, during which the court heard more than thirty witnesses.
 

 The testimony disclosed that there had been several burnings and shooting at Homer with racial overtones. A number of State Highway Policemen were assisting the Claiborne Parish Sheriff in an effort to prevent further incidents. From the testimony offered, the trial judge overruled the motion.
 

 
 *295
 
 In his
 
 Per Curiam,
 
 the trial judge states:
 

 “After hearing the various witnesses testify, and, upon considering the evidence in support of the Motion, it was not shown that, for any reason, a fair and impartial trial could not be obtained in Claiborne Parish. The Court did not believe that any prejudice which might exist in Claiborne Parish, any undue influence or any other reasons existed such as would affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
 

 “In fact, this same defendant was acquitted by another jury chosen from the same General Venire List, and perhaps from the same Petit Jury Venire, in another case involving the alleged burnings, shootings, etc., which occurred in Claiborne Parish.”
 

 To warrant a change of venue, the burden is upon the defendant to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. State v. Washington, 256 La. 233, 236 So. 2d 23 (1970); State v. Poland, 255 La. 746, 232 So.2d 499 (1970).
 

 We have reviewed the testimony. Several of the major witnesses called by the defense conceded that a fair trial could be had. The contradictory testimony is weak and unimpressive. In its totality, the testimony falls far short of satisfying the requirements for a change of venue. We conclude that the trial judge properly denied the motion.
 

 BILL OF EXCEPTIONS NO. 6: Denial to the Defendant of the Right to Call the Special Prosecutor as a Witness.
 

 Defendant reserved Bill of Exceptions No. 6, after the court refused to allow defense counsel to call as a witness George Robinson, the Assistant Attorney General who was prosecuting the case- for the State. Defense counsel announced that his purpose in calling the Assistant Attorney General was to show that David Crew, the State’s witness, had been granted immunity from prosecution.
 

 We find no error in this ruling. The Assistant Attorney General announced in open court, out of the presence of the jury, that David Crew had been granted immunity from his part in the crime.
 
 [2]
 
 David Crew admitted on cross-examination that he had been granted immunity.
 
 [3]
 
 Since the prosecutor had announced the grant in open court, other witnesses were available to establish the grant of immunity, if testimony other than the admission of David Crew were desired.
 

 We find no reversible error in the ruling of the trial judge.
 

 
 *297
 
 BILL OF EXCEPTIONS NO. 7:
 

 Prosecutor’s Argument to the Jury.
 

 In his closing argument to the jury, the prosecuting attorney made the following statement:
 

 “But I would like the opportunity to go over the testimony of a few of the witnesses that in my opinion gave testimony that establishes beyond a reasonable doubt that the accused is guilty of the crime for which he is charged here today.”
 

 Defense counsel objected, requested that the jury be removed, and thereafter moved for a mistrial. The trial judge denied the mistrial and the jury returned to the courtroom. The trial judge instructed the jury to disregard the statement insofar as it may have represented an expression of opinion of the prosecuting attorney.
 

 Article 774 of the Louisiana Code of Criminal Procedure provides:
 

 “The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.”
 

 When the prosecutor’s statement is read as a whole, as must be done, it is apparent that it is no expression of an unsupported personal opinion of guilt. Rather, it represents a conclusion based upon the evidence. As such, the argument was proper.
 

 In State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964), we set forth the-controlling law as follows:
 

 “Although it is generally considered to be erroneous for the prosecuting áttorney to declare his individual opinion' or belief that the accused is guilty when the accusation is made in such a manner that the jury may understand that the prosecutor’s belief is based on evidence dehors the record, such an opinion is permissible if the prosecutor states, or it is apparent, that his opinion is based on the evidence of record. State v. Cortex, 241 La. 610, 129 So.2d 792 (1961); State v. Hills, 241 La. 345, 129 So.2d 12 (1961); State v. Paternostro, 219 La. 563, 53 So.2d 673 (1951); State v. Peyton, 194 La. 681, 194 So. 715 (1940); State v. Frazier, 165 La. 758, 116 So. 176 (1928); State v. Horton, 151 La. 683, 92 So. 298 (1922). See also State v. Maney, 242 La. 223, 135 So.2d 473 (1961); State v. Kelly, 237 La. 991, 112 So.2d 687 (1959).”
 

 Defendant concedes that the foregoing decision would be dispositive of this case, but submits that United States Supreme Court in Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) has abrogated the prior jurisprudence.
 

 We find Turner v. Louisiana inapposite. In that case, the United States Supreme
 
 *299
 
 Court reversed the state conviction because two major state witnesses, deputy sheriffs, were placed in charge of the jury and had “close and continual association” with them during the three-day trial.
 

 Defendant also relies upon Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). This case is also distinguishable. There, the United States Supreme Court set aside a criminal conviction, because a bailiff remarked to certain members of the jury that the defendant was guilty, that he was a “wicked fellow”, and that the Supreme Court would correct any error.
 

 We conclude that the bill of exceptions lacks merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 DIXON, J., concurs, being of the opinion that the ruling in Bill of Exceptions No. 6 might have been error, but harmless nevertheless.
 

 [1]
 

 . The trial judge sentenced defendant to an additional 197 days but gave him credit on the sentence for the 197 days in casto ly prior to .trial.
 

 [2]
 

 . Tr. 960, 963.
 

 [3]
 

 .
 
 Tr. 976, 983.