278 So.2d 38 (1973)
STATE of Louisiana
v.
David Wade FOY.
No. 52475.
Supreme Court of Louisiana.
May 7, 1973.
Rehearing Denied May 29, 1973.
*40 John J. Dolan, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
Defendant was convicted of murder (LSA-R.S. 14:30) and sentenced to death. He has appealed, relying upon Bills of Exceptions reserved in the trial court.
The background facts are these: On September 9, 1972, David Wade Foy, an inmate of the Louisiana Correctional Institute, escaped from a work crew near Lake Charles. He entered a residence and changed clothes. When an occupant of the residence returned, he fled, leaving his prison garb behind. A short time later, Sylvester Keller, the operator of Pat's Garage, was found dead and his personal car missing. Police investigation connected Foy with the homicide. The State's theory was that the defendant stabbed Keller in the course of an armed robbery.

BILL OF EXCEPTIONS NO. 1.
The first bill was reserved to the method of selecting jurors in Calcasieu Parish after the court denied defendant's Motion to Quash the indictment. Defendant argues that use of the voter registration roll exclusively to secure the Grand Jury and general jury venire is discriminatory in that it systematically excludes Negroes. He also argues that the one source of eligible jurors used showed a disparity of whites to Negroes (an approximate 5 to 1 ratio). Appellant further argues that the use of records of the Registrar of Voters restricts the representation of qualified Negroes. He cites Alexander v. State of Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), in which the United States Supreme Court held that the State failed to prove that permissible selection criteria and procedures had been followed in selecting the all-white grand jury. The court based its decision on a factual determination that the selection procedures systematically provided a "striking" progressive decimation of potential Negro grand jurors. The case before us is factually dissimilar.
In Alexander, appellant established a prima facie case of discrimination by showing a "systematic", "progressive decimation" of Negroes through several steps in this selection process, plus clearly visible racial identification in two crucial steps of the procedure. In the case before us, no such system is shown.
The Registrar of Voters testified that the ratio of black male voters to white male voters is 1 to 5. Population ratios are not disclosed in the record. The procedure used in selecting a venire is that the actual registration certificates are turned over to the Clerk of Court who is the Jury Commissioner; the Commissioner, according to his testimony, copies certain information from the certificates, but does not note race. This list is then used as one source for the jury venire. Also used are city telephone directories.
Appellant does not produce any evidence of systematic discrimination and the testimony attached to the bill shows that the racial discrimination opportunities existing in Alexander are not found in Calcasieu Parish.
Further, the use of registration rolls in itself does not provide the basis for a complaint of denial of equal protection. *41 State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Douglas, 256 La. 186, 235 So.2d 563 (1970), certiorari denied, 401 U. S. 914, 91 S.Ct. 888, 27 L.Ed.2d 814 (1972); State v. Poland, 255 La. 746, 232 So.2d 499 (1970); State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966), cert. denied, 389 U.S. 861, 88 S.Ct. 113, 19 L.Ed.2d 128.
The bill of exception is without merit.

BILL OF EXCEPTIONS NO. 2.
The second bill was reserved when the trial judge denied the defendant's Motion for Change of Venue. Defendant argues that because of the widespread publicity surrounding his arrest, his indictment and the alleged evidence against him, the public mind has been influenced to the extent that he could not receive a fair trial in Calcasieu Parish. In denying his Motion for Change of Venue, the district judge found that defendant had not borne his burden of proving adequate grounds for a change of venue. LSA-C.Cr.P. Art. 622; State v. Square, 257 La. 743, 244 So. 2d 200 (1971); State v. Washington, 256 La. 233, 236 So.2d 23 (1970); State v. Poland, supra.
Defendant argues that the facts elicited at the hearing on the motion are sufficient to justify a change, relying on State v. Washington, supra, and State v. Poland, supra.
Testifying at the hearing were representatives of the local news media. Each was questioned concerning the coverage given the Keller Murder, with particular emphasis on the stories as they pertained to the defendant, David Foy.
One local radio station had no report at all; another had only one news item. The newspaper carried a different story on five different days, including a general Grand Jury report which noted the indictment of Foy, along with two other murder indictments. Also included in the five articles was an item on postponement of trial.
The local television station carried two film clips with accompanying stories; each film was shown only twice; once on the early news and once on the late news program. Other television coverage given included a condensed news story on the Grand Jury action in murder cases only and a separate full story on all Grand Jury action. All persons testifying at trial stated that they had no preconceived notion of Foy's guilt or innocence.
The trial judge, in his per curiam to the bill of exceptions, concluded that the publicity in this matter was no greater than in other cases of a similar nature and that defendant had not borne his burden of proving a sound reason for a change of venue as required by La.C.Cr.P. Art. 622. We agree.

BILL OF EXCEPTIONS NO. 3.
Defendant's Motion to Suppress the Confession was denied after a preliminary hearing; he reserved this bill. He again reserved a bill when the confession was admitted into evidence at the trial.
Appellant argues that his rights under the Fifth and Fourteenth Amendments of the U. S. Constitution, as set out in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1601, 16 L.Ed.2d 694, were violated. He did not particularize the complaint in his bill, either at hearing or at trial. However, the record discloses that his main complaint is that he was denied the right to an attorney during interrogation.
Our review of the record convinces us that defendant's rights were protected. The record shows that defendant was advised of and understood his rights. Testimony of the deputies shows that defendant at no time asked to consult an attorney. He admittedly had an opportunity to contact his attorney but chose not to do so.
In overruling the motion to suppress, the trial judge stated:
"The defendant himself said his Miranda rights were explained to him *42 twice, he knew what he was doing, and he made the statement because he wanted to. I kept wondering throughout the hearing on what basis defendant claimed his confession was not free and voluntary. I never found out. Not only did the testimony of defendant himself establish the freeness and voluntariness of the confession, the testimony of the officers taking the statement lined up also exclusively in that direction."
The record supports his conclusion. The bill has no merit.

BILL OF EXCEPTIONS NO. 5.
Bill of Exceptions No. 5 was perfected when, in his opening statement, the District Attorney allegedly made reference to defendant's escape from a work detail immediately prior to commission of the crime. Defendant argues that this reference violates his rights under the Fifth Amendment.
The trial judge's Per Curiam correctly disposes of this bill of exceptions as follows:
"Actually, the record reveals that the district attorney simply said in his opening statement that the defendant had left a work detail, without mention of his being a prisoner at the time. However, the objection was overruled for several reasons. First, although the escape from the penitentiary was another crime, it was so closely connected with the commission of the crime for which the defendant was being tried that it formed a part of the res gestae. State v. Guillory, 201 La. 51, 9 So.2d 450 (1942). Second, the killing and the escape were all a part of the same transaction and, therefore, evidence was admissible to prove all of the facts and circumstances surrounding such transaction. State v. Allen, 183 La. 1069, 165 So. 203 (1936). State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966), cert. denied, 389 U.S. 861, 88 S.Ct. 113, 19 L.Ed.2d 128. In addition, although it was unnecessary to establish that the defendant had a specific intent to kill as he was charged with murder under R.S. 14:30(2), the state had to prove the killing took place while the defendant was engaged in the perpetration or attempted perpetration of armed robbery. Theft is an essential element of armed robbery and to establish this the state is required to prove that the defendant intended to deprive another permanently of the subject of the taking. R.S. 14:64 and 67. Certainly, evidence tending to prove that the defendant had escaped from a penitentiary work detail was relevant to establish that he intended to permanently deprive the person killed of the automobile which he took in furtherance of his escape. State v. Evans, 249 La. 861, 192 So.2d 103 (1966), cert. denied, 389 U.S. 887, 88 S.Ct. 110, 19 L.Ed.2d 187."
We agree that the Bill of Exceptions is without merit.

BILL OF EXCEPTIONS NOS. 6 and 7.
Defendant argues that the introduction into evidence of a plastic replica of a fingerprint and two photographs of comparison prints (allegedly belonging to Foy) is reversible error in that, under Article 769 of the Louisiana Code of Criminal Procedure, the State is bound to its opening statement and no mention of fingerprints was made. The objection was overruled by the trial judge who found that the evidence was fairly within the scope of the opening statement.
Article 769 of the Louisiana Code of Criminal Procedure provides:
"Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.
"If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense."
*43 As we have often held, the State is not required to enumerate every shred of evidence it intends to use. It is sufficient if the evidence offered falls within the general description of intended proof. See State v. Cryer, 262 La. 575, 263 So.2d 895 (1972); State v. Jones, 230 La. 356, 88 So.2d 655 (1956); State v. Stahl, 236 La. 362, 107 So.2d 670 (1958); State v. McLean, 211 La. 413, 30 So.2d 187 (1947).
It is true that in his opening argument, the district Attorney did not specifically mention the fingerprints. He did say, "The State will show by competent evidence before you, by testimony from witnesses and other real evidence, that the defendant [then follows in detail the activities of the defendant from his departure from the work detail, through the commission of the crime, to his arrest.]"
We conclude, as did the trial judge, that the fingerprint evidence was within the scope of the opening statement.

BILL OF EXCEPTIONS NOS. 8 and 11.
Bill of Exceptions Nos. 8 and 11 were reserved when a photograph of a portion of the garage, purporting to show spots of blood on the floor, was admitted into evidence. Bill No. 9 was reserved when a photograph of decedent's body, taken at the morgue, and several pictures of the scene of the crime were introduced and admitted. Defendant makes the same arguments as he did in Bills Nos. 6 and 7; that is, that specific points of evidence must be referred to in the opening statement and if not mentioned, the items are inadmissible. As we have stated, Louisiana law does not require a specific reference to every shred of evidence; the law requires only that admissible evidence be "fairly within the scope of the opening statement ..." LSA-C.Cr.P. Art. 769.
The trial judge found that the first photograph was "relevant to establish the place at which the crime was committed" and the second "tended to identify the decedent and establish the cause of death." The others showed the location and to some extent the manner in which the crime was committed. These facts were included in the state's opening statement, and thus the evidentiary items were fairly within the scope thereof.
We find that the trial judge did not abuse his discretion in admitting the photographs into evidence. These bills have no merit.

BILLS OF EXCEPTIONS NOS. 12 and 13.
Bill of Exception No. 12 was reserved when, over defense counsel's objections, some money and two car keys taken from defendant's person were introduced into evidence. Deputy Ellis of the Identification and Laboratory Division of the Calcasieu Parish Sheriff's Department testified that the keys fit the vehicle in which decedent's body was locked.
Bill No. 13 was reserved when the trunk lock from the vehicle containing decedent's body was introduced and received into evidence. The trial judge, in his per curiam to these bills, found that the District Attorney said in his opening statement that the defendant took the deceased's money, stabbed him in the right chest and locked him in the trunk of a car at the garage. He concluded that this evidence was relevant to establish these facts and was fairly within the scope of the opening statement. The court found that the lock was admissible into evidence because it tended to show that the defendant had access to the trunk of the car in which decedent's body was found.
We agree with the conclusion that the evidence was fairly within the scope of the opening statement.

BILL OF EXCEPTION NO. 14.
Bill No. 14 was reserved upon the admission into evidence of a knife found *44 by the police in the stolen vehicle belonging to the decedent and allegedly driven by the defendant to Ascension Parish, where he was captured. Mrs. Johnson, occupant of the residence entered by defendant, identified the knife as one belonging to her and as being the one stolen by the defendant on the day of the killing. Defendant objected to the introduction of the knife as being outside the scope of the district attorney's opening statement. The opening statement recites that the victim was stabbed. Hence, the evidence was fairly within the scope of the opening statement. See: State v. Jones, supra, in which a rifle was held to be admissible evidence even though not specifically mentioned in the opening statement since the opening statement did indicate that the state would prove the cause of death was rifle fire.
Thus, we find that the bill has no merit.

BILLS OF EXCEPTIONS NOS. 15 and 17.
Bills of Exceptions Nos. 15 and 17 were reserved when two items of clothing and a pair of shoes were admitted into evidence over defendant's objections. These items were recovered in or near a motel under construction in Ascension Parish, where defendant was arrested. Defendant admittedly hid in this motel. These items were identified by a Mrs. Johnson as items belonging to her husband and stolen from her home on the day of the Keller murder.
Defense Counsel objected to the admission of evidence on the same grounds as used in previous bills, that the evidence was not specifically mentioned in the opening statement and thus, was not admissible. The District Attorney did say he would prove that shortly before the crime occurred the defendant went into a house, changed clothes and obtained a knife. Introduction of the clothes merely corroborated her testimony and as such, was fairly within the scope of the opening statement.
The bills of exceptions have no merit.

BILL OF EXCEPTIONS NO. 18.
Bill of Exceptions No. 18 was reserved when a photograph of clothing left at the scene of a burglary was received into evidence. Defendant objected to introduction of the photograph of a pair of work shoes and gold socks as being outside the scope of the opening statement. While the District Attorney did not specifically mention the shoes and socks, he did say in the opening statement that the defendant changed clothes and obtained a brown handled knife at the home of Mrs. Pam Johnson who testified that defendant was the person she saw. She further testified as to the description of the clothes left behind.
The trial judge determined that the exhibit was relevant to establish the facts mentioned by the District Attorney and to corroborate Mrs. Johnson's testimony and thus was properly admitted. We agree; the exhibit was within the scope of the opening statement and relevant to establish the facts stated.
The bill has no merit.

BILLS OF EXCEPTIONS NOS. 19 and 22.
Bills of Exceptions Nos. 19 and 22 were reserved when various items of physical evidence were admitted into evidence over defense objections during rebuttal. These items were not introduced during the case in chief, and defendant argues that they were admitted in circumvention of the procedural rules. He relies on State v. Hemler, 157 La. 902, 103 So. 257 (1925) and State v. Johnson, 116 La. 30, 40 So. 521 (1906).
The trial judge, in his per curiam, pointed out that introduction of the clothing left by defendant in the residence of Mrs. Johnson was admissible on rebuttal to refute defendant's testimony denying that *45 he had even been in the Johnson residence. The trial judge concluded, and we agree, that in view of defendant's confession, the state had no reason to anticipate that he would deny being in the Johnson residence. Thus, the state had no way of knowing the clothing would be essential to its case. It was proper rebuttal evidence to contradict and discredit the accused's testimony. State v. Vernon, 251 La. 1099, 208 So.2d 690 (1966); State v. Poe, 214 La. 606, 38 So.2d 359 (1948); State v. Mattio, 212 La. 284, 31 So.2d 801 (1947).
The cases relied upon by defendant are factually distinguishable. The bills have no merit.

BILL OF EXCEPTIONS NO. 23.
Defendant's Motion for a New Trial was denied; he reserved Bill of Exceptions No. 23. As all issues had been raised previously in bills reserved during the progress of the trial, nothing new is presented by this motion.
We note that the defendant received the death sentence. In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972), the United States Supreme Court held that the imposition of the death penalty under present procedures was unconstitutional. Hence, in compliance with the judgment of that Court, we must vacate the death sentence and remand the case to the trial court for the imposition of a sentence of life imprisonment. See State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).
For the reasons assigned, the conviction is affirmed, but the death sentence is vacated and the case is remanded to the trial court for the imposition of a sentence of life imprisonment.
BARHAM, J., concurs.